CONWAY COUNTY ET AL. V. LITTLE ROCK AND FORT SMITH
RAILWAY COMPANY.

1. ATTORNEY: *His authority to collect judgment: County Attorney.*
   Ordinarily an attorney is authorized to collect a judgment recovered for
   his client and to execute in the name of his client a proper acquit-
   tance therefor. His authority continues until the judgment is collect-
   ed, unless he is sooner discharged; and this rule applies to the attorney
   of a municipal or *quasi* municipal corporation, as well as of any other
   client.

2. COUNTY: *Liability for acts of its attorney.*
   Where one of two innocent parties must suffer by the acts of a third, he
   who enables the third to occasion the loss must sustain it; and so when
   the County Court employs an untrustworthy or irresponsible attorney
   who collects a debt or revenue from another, and retains or squanders
   it, the county, and not the debtor, must bear the loss.

.APPEAL from *Conway* Circuit Court in Chancery.
HON. W. D. JACOWAY, Circuit Judge.

*John Fletcher*, for appellants:

Public corporations can not be bound, unless the agent
or attorney is expressly authorized to do the act. *Parsel v.
Barnes & Bro.*, 25 *Ark.*, 261; *Story on Agency* (6th. ed.), *Sec.
307 a; Whiteside v. U. S.*, 3 *Otto*, 257; *Bancroft v. Thayer*,
8 *Reporter*, 39. (*U. S. Ct. Ct., D. Oregon, May 14, 1879.*)

The appellee acted directly in opposition to the instruc-
tions of the county, and its action partook of Reid's fraud,
and it should bear the loss. *Holden v. N. Y. & E. Bank*,
7 *Reporter*, 692 (72 *N. Y.*, 286).

The County Court had no authority to empower Reid to
receive and receipt for the taxes. *Sec. 5288 Gantt's Digest*
expressly negatives the idea that the attorney shall receive
or receipt for taxes. The receipt of part of the money was
no ratification of the illegal act. (72 *N. Y., supra.*) If the

Conway County et al. v. Little Rock and Fort Smith R. R. Co.

County Court could not or did not authorize Reid to receive the money, it could not afterwards ratify his act. *1 Dillon on Munic. Corp., Sec. 387 and authorities; Peterson v. Mayor, etc., 17 N. Y., 449, 454; Mayor v. Reynolds, 20 Md., 1-10.*

*Clark & Williams,* for appellee:

The lands were not subject to taxation upon any assessment until 1875. (*Acts of 1875, adj. sess., page 29.*) The levy for 1876 was void. The agreement to pay the taxes for 1875 and 1876 was entirely voluntary, and as to the taxes of 1877-8-9 they were not in any manner involved in the original suit. After 1876 no assessment could be made until 1880, except by special act of the Legislature. If the payment to Reid & Henry was void, the county lost nothing, and had no equity against the decree. The demurrer admits the compromise contract; then on what principle can the county claim that Reid and Henry were her attorneys to negotiate the contract, and then deny their agency in receiving the money? Her reception of the $6,060.75 ratified the whole contract. *Bigelow on Estoppel, 511; 18 B. M., 175; 1 Black, 491; 12 Wall., 358; 26 N. H., 334; ib., 495; 38 N. Y., 266; 32 N. Y., 105; 12 Met., 405; Paley on Agency, 276-7; 3 Carr & Payne, 352.*

No offer to pay the money back was made.

SMITH J. In August, 1876, the County Court employed Reid and Henry to get the lands of appellee, lying within the limits of Conway County, properly assessed and listed for taxation. The railway company had a valuable land grant, and these lands had been patented to it in 1872, but it had never paid taxes thereon. It was expected that the company would resist the levy and collection of taxes;

and these lawyers were retained to conduct any and all litigation that might grow out of the matter. They were to receive a commission of ten per centum upon the amount of taxes that should be realized. They prepared a list with values attached, which it seems was adopted by the assessor. The lands were carried to the tax-books and the taxes extended for 1876, and the four preceding years.

The company refusing to pay, the collector returned the lands delinquent, and advertised them for sale for non-payment of taxes. The company then filed against the county and its collector, its bill for an injunction, and a restraining order was granted upon the ground, as we suppose, that the lands were not taxable before the passage of the act of November 30, 1875. On the fourth of June, 1879, the solicitors of the parties, plaintiff and defendants, agreed upon a compromise decree, which was reduced to writing, and signed by them, and was to be entered at the September term of the Conway Circuit Court. The substance of this decree by consent was, that the company should pay taxes for the years 1875 to 1879, upon the valuation of $0.76 2-10 per acre, and for the years 1872 to 1874, the injunction was to be perpetuated. On the same day the company paid to Charles C. Reid, a member of said firm, $8,506.94, the aggregate of taxes due, according to the terms of agreement for 1875 to 1878, it being understood that the collector was to collect the taxes for 1879, upon the above mentioned valuation, the same as if the lands had been assessed at that figure, and so appeared upon the tax-books. Of this sum, Reid accounted only for $6,060.55 and it is said, has since died insolvent. His fee, as per contract with the County Court, amounted to $850.69. The County Court demanded judgment for the remainder against the company, denying Reid's authority to receive and receipt for the money. But the court below

Conway County et al. v. Little Rock and Fort Smith R. R. Co.

sustained the contention of the company, that it had already paid the county's accredited agent and solicitor of record, and decreed accordingly.

The record presents some irregularities and anomalies. For example: The Circuit Court has nothing to do with fixing the valuation of lands for purposes of taxation. That duty is confided to the assessor and County Court. Nevertheless, counsel do not seek to repudiate the agreement that was made, but on the contrary to have it carried into effect. We shall therefore respond to the simple question, whether the loss caused by Reid's unfaithfulness, should be made good by the company, or be borne by the county.

Were the acts of Reid the acts of the county, either by original authority or by ratification?

After obtaining and holding to its own use the money, can the county be allowed to say Reid had no right to receive the money?

We make no doubt that the company in paying the money to Reid, acted in perfect good faith. The only interest it could have had in the matter, was to discharge the lien or claim for taxes. It was natural to suppose that the attorney who had obtained the judgment, was the proper party to whom payment should be made.

Ordinarily an attorney is authorized by virtue of his retainer to collect the judgment and to execute in the name of his client, a proper acquittance therefor. His authority does not cease upon the rendition of judgment, but continues until the money is made, unless he is sooner discharged. *Gantt's Digest, 3630; Pennington v. Yell, 11 Ark., 212; Miller v. Scott, 21 Ib., 396.*

1. ATTORNEY: His authority to collect judgments.

We are not aware of any rule of law that should vary the practice, when the client happens to be a municipal or quasi municipal corporation.

2. COUNTY: Liability for acts of its attorney.   Moreover, it is a principle of our law, that whenever one of two innocent parties must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it. If the County Court has employed an attorney who was not trustworthy or who was irresponsible, and the county has thereby lost a debt or a portion of its revenues, it has nobody to blame except its own officers and agents.

Affirmed.