Z. Douglass Lansing and Others, Appellants, *v.* Eliphalet W. Bliss, Respondent.

*Broker's commissions — effect of a settlement with one of several joint claimants for commissions — receiving pay from both sides.*

Where several persons jointly contract with a person to find him a purchaser for his business and such purchaser is found and the sale of the business made to him, the vendor cannot, by making a settlement with one of the joint contractors, escape from his liability to pay to the others an agreed sum as commissions upon the sale.

The rule is that when one is liable to two or more on a joint contract and he settles with one for a part of the claim, the others may sue for their part without joining the one with whom a settlement has been made.

While it is a general principle of the law that a broker cannot accept commissions from both sides, he may recover from an employer who has knowledge that the broker is to be paid or expects to be paid by the other side.

Appeal by the plaintiffs, Z. Douglass Lansing and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of June, 1894, upon the verdict of a jury directed by the court after a trial at the New York Circuit.

*Delos McCurdy,* for the appellants.

*Benjamin F. Tracy* and *Edward M. Shepard,* for the respondent.

Parker, J.:

The complaint alleges in substance that the defendant, being desirous of selling his business, agreed with the plaintiffs and one Samuel S. Smoot that if they would procure for him a purchaser at a satisfactory price, he would pay them $100,000 for their services. That the plaintiffs and Smoot did procure a purchaser, to whom defendant made a sale. That the defendant settled with Smoot, and paid to him $15,000 for his commissions, who released the defendant from any further indebtedness to him on account of the commissions agreed to be paid.

These allegations are denied by the answer. On the trial the plaintiffs presented testimony tending to establish the contract alleged in the complaint, although some portions of it would permit

a finding that a different contract was made than that alleged in the complaint, but with the different inferences of fact as to the contract, permitted by the evidence, we have no present concern.

The testimony being closed, counsel for defendant moved for a direction of a verdict in favor of the defendant upon the whole case, specifying several grounds.

The trial court refused to consider any of the grounds of the motion, save one, which was that Mr. Smoot, one of the parties in interest with the plaintiffs, had been paid $15,000 for commissions, and had released the defendant from all obligations to him under the contract, which had the legal effect to discharge the defendant from all liability thereunder to these plaintiffs, as well as Smoot, and on that ground he directed a verdict in favor of the defendant.

In support of this ruling the respondent cites the following cases : *Pierson* v. *Hooker* (3 Johns. 68); *Austin* v. *Hall* (13 id. 286); *Fitch* v. *Forman* (14 id. 172); *Bulkley* v. *Dayton* (Id. 388); *Wheeler* v. *Curtis* (11 Wend. 653); *Wells* v. *Evans* (20 id. 252.)

In a later decision (*Gock* v. *Keneda*, 29 Barb. 120), which was a case of two tenants in common of chattels for the conversion thereof, it was held that a settlement of an account and the release of the defendant by one of the parties could not operate to defeat the rights of the other to recover his portion of the damages.

In the opinion the court considered *Austin* v. *Hall* (*supra*) and *Decker* v. *Livingston* (15 Johns. 479), and pointed out the distinction between those cases and the one then under consideration, reaching the conclusion that the rule prevailing in actions by tenants in common for trespass upon lands is not applicable to tenants in common of personal property, and citing with approval cases holding that when one is liable to two or more on a joint contract, and settles with one for part of the claim, the others may sue for their part without joining the one settled with, because a settlement by one tenant in common of personal property, without the consent of the others, only inures as a settlement with the party settling.

This case unquestionably supports the plaintiff's position. So far as our examination discloses, its authority has not since been called in question.

It is cited in *Goodwin* v. *Griffis* (88 N. Y. 629–636) and *Hathaway* v. *Orient Ins. Co.* (134 id. 409–412), and in the latter case as

furnishing an exception to the rule of *Austin* v. *Hall* and *Decker* v. *Livingston* (*supra*).

The respondent urges that should it be held that the ground upon which the trial court directed a verdict in favor of the defendant was not tenable, still the judgment should be affirmed, if upon the whole case it should appear that the defendant was entitled to a direction of a verdict. Without considering that proposition, we proceed to a brief consideration of the other grounds upon which, in part, the motion was based.

(1) It is claimed that the evidence shows that the employment of the plaintiffs and Smoot was to sell the property for $1,350,000, in which event the plaintiffs were to have $100,000 for their services; that in any event, by the terms of the contract, the property was to net the defendant, over and above all payments for brokerage or otherwise, the sum of $1,250,000, and that no such sale was effected.

It is undisputed that in all the conversations had between the defendant and the plaintiffs or Smoot, the defendant insisted that the price he should receive should be $1,250,000 net. But some of the plaintiffs testified that the agreement with the defendant was that they should find him a purchaser, and that the price should be $1,350,000, $100,000 of which should be paid to the plaintiffs and Smoot, leaving to him the sum which he desired to obtain for his property. Their position was that together with Smoot they found him a purchaser, but that in violation of his agreement with them the defendant only asked and received $1,250,000; by reason whereof they became entitled to the commissions agreed upon.

Against their position, which suffers embarrassment from contradictory statements on the part of one or more of the plaintiffs, is the significant fact that the negotiations with the brokers in London, who acted for the real purchasers, seem to have been conducted in behalf of the plaintiffs by their associate Smoot, who, with the defendant and the London brokers, arranged the terms of purchase and sale, and subsequently accepted from the purchasers' brokers, for his services, a certain sum of money, together with a number of shares of the stock of the new corporation, in payment for his services. Again, the plaintiff Fisher, in an affidavit made December 24, 1891, said: " I have no claim whatsover against said defendant for

or on account of commissions earned or claimed by me to have been earned by reason of the sale or transfer of the capital stock and property of the E. W. Bliss Company." The affidavit was made some two weeks after this action was brought, and, unexplained, has a tendency to show what his understanding of the original contract was, and its bearing upon his right to recover commissions for the sale effectuated through the defendant and plaintiffs' associate, Smoot, to whom he testified : " I trusted my affairs on the other side to Mr. Smooth and my interest. He represented me on the other side. * * * Whatever time he went to London he represented this property that he was negotiating. He represented us four gentlemen who were associated ; he was doing the entire business." In explanation of his affidavit he said he had been informed by the defendant that he managed the whole thing himself, and consequently the plaintiffs were not entitled to anything, and that believing the statement he made the affidavit. But subsequently, reaching the conclusion that he had been deceived, that Bliss had not managed it himself, but, on the contrary, the sale had been brought about by his associate Smoot, who was representing him and the other plaintiffs in London, he changed his mind as to Bliss' liability to him for commissions.

A further consideration of the evidence under this head will not be profitable, because the questions relating to the weight of testimony, the consideration to be given to the apparent contradictions, the explanations offered in relation to them and the proper inferences to be drawn from the testimony as a whole, are for the jury, not the court, to pass upon.

The further point is made that Smoot having finally accepted a commission from the purchasers, the plaintiffs cannot recover a commission from the seller even though the contract with the defendant was as claimed by them. That plaintiffs did have an understanding with their associate Smoot that they were to receive some shares of stock from the purchasers, in the event of the consummation of the sale, is made clear by Fisher's testimony, and were there no evidence that such expectations on the part of the plaintiffs were understood by the defendant Bliss at about the time of the making of the alleged contract between defendant and these plaintiffs with their associate Smoot, defendant's point would be well taken.

Employment of a broker by an owner of property is to effect a sale on terms most advantageous to his employer. This the broker cannot do, and at the same time render similar services to the party to whom he attempts to sell the property.

It is impossible for the broker to negotiate for the benefit of both, for if he gets a good price for the property sold it is obtained from the man who buys, and if the man who buys secures a good bargain it is necessarily at the expense of him who sells, and so the general rule has come to be well established, that where an agent accepts a commission from the seller, he cannot also receive one from the purchaser, although in advance of the sale the purchaser may have contracted to pay him a commission. The rule was established to prevent fraud, and it has an exception which grows out of a situation where the reason for the rule does not exist.

If a party employs a broker, agreeing to pay him for his services, and has knowledge that he is also to be paid or expects to be paid by the other party, the agreement will be enforced. (*Rowe* v. *Stevens*, 53 N. Y. 621.)

Fisher testifies that his conversations with Smoot in respect to the expected contributions to the brokers by the purchasers, of certain of the shares of stock, was communicated by him to the defendant, Bliss, in his private office, who with such knowledge assented to the further negotiations had by plaintiffs and Smoot under the arrangement which he had with them. If Fisher's testimony in such respect be true the defendant was within the exception to the general rule. Whether it was true presented a question for the jury.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

Van Brunt, P. J., and O'Brien, J., concurred.

Judgment reversed and new trial granted, costs to appellants to abide event.