THEODORE I. SCHWARTZMAN, Respondent, *v.* PINES RUBBER COMPANY, INC., a Domestic Corporation, Appellant.

Second Department, December 5, 1919.

Contract — parol evidence to vary — pleading — all covenantees in instrument necessary parties plaintiff — settlement with one of two covenantees as severance — evidence — admissibility, on question of damages for breach of commission contract, of contract made with defendant by one covenantee after arrangement with other has been repudiated — when commissions due on contract to secure government orders — evidence sufficient to show breach of contract — validity of agreement for commissions on government orders.

A contract, either verbal or written, or in part verbal and in part written, not attested by seal, is only parol, but the written part, being the better evidence, excludes spoken words contradicting the written part or contrary to it.

All persons whose names appear on a written instrument as covenantees, if no higher interest appear in some of them, must be made parties plaintiff in an action thereon.

Where one of two covenantees to a commission contract has received his entire share of the commissions, he need not be joined in an action by the other to recover his share of the commissions.

And likewise, in an action to recover damages for breach of a contract between two covenantees and the defendant, if the defendant has settled with one of the covenantees, there is a severance of the cause of action, and the defendant is liable in an action at law to the other alone.

In an action to recover damages for breach of contract by which the defendant was to pay certain commissions to the plaintiff and one W. for orders secured from the government, a contract made with the defendant by W., after he had repudiated the arrangement between himself and the plaintiff by which he agreed to do the work for a smaller commission, is not admissible in evidence in reduction of damages.

Under the contract herein to pay a commission on orders for goods secured from the government, the commission becomes due as soon as the requisition for the goods is received by the party who is to supply them.

In the action for the breach of the commission contract, evidence *held* to justify a finding that the discharge of the plaintiff was not fair and in good faith.

An agreement to pay commissions on government orders is not void as against public policy.

Appeal by the defendant, Pines Rubber Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 3d day of June, 1918, and also from an order entered in said clerk's office on or about the same day, as resettled by an order entered in said clerk's office on the 7th day of June, 1918, denying defendant's motion for a new trial made upon the minutes.

*Luke D. Stapleton,* for the appellant.

*Henry F. Cochrane,* for the respondent.

Jenks, P. J.:

The defendant had three contracts (or orders) with government. The plaintiff sues for commissions in procuring two of the contracts, and for damages for breach of defendant's agreement to employ plaintiff in procuring the third contract. He recovered upon both causes, and the defendant appeals.

By answer, and at trial by motions, objections and requests the defendant asserted a defect of parties in that Wells was a stranger to the suit. Soon after the plaintiff and defendant

had agreed for the services, the plaintiff associated himself with Wells, with whom the plaintiff agreed to share the commissions. The plaintiff insists that Wells was only his " subagent; " the defendant contends that Wells was plaintiff's partner, or at least a joint venturer; but the view I take of this question of non-joinder does not require determination of this dispute. For at first, although the agreement for commissions was verbal and between only plaintiff and defendant, after Wells was associated writings were made, subscribed by the defendant, which were as follows:

" *May* 21, 1917.

" We hereby employ Frederick A. Wells and Theo. I. Schwartzman to procure an order for Ponchos or Slickers and agree to pay 2½% commission on any orders obtained by him from the Government, at $3.55 for Ponchos and $4.25 for Slickers. We further agree to pay to said Frederick A. Wells and Theo. I. Schwartzman all over the above prices he may procure, after the order is delivered and accepted.

" PINES RUBBER CO.

" By JOSEPH PINES, *Prest.*"

" J. PINES, President                    D. PINES, Treasurer
" PINES RUBBER CO., INC.

" Rubberizers of Cloth and Manufacturers of Ladies', Men's, Boys' and Misses Slip-óns and Raincoats.

" Telephones, Sunset 6363–6364

" Bush Terminal Bldg. No. 19

" BROOKLYN, N. Y. City, *July* 3, 1917.

" We agree to employ Frederick A. Wells and Theodore I. Schwartzman to procure an order for Ponchos or Slickers, and agree to pay 3% commission on any orders obtained from the government, at $3.55 for Ponchos, and $4.25 for Slickers. We further agree to pay said Frederick A. Wells and Theodore I. Schwartzman ½ over the above prices they may procure after the order is delivered and accepted.

" R.N.                    PINES RUBBER CO., INC."

It appears that these provisions were both accepted and acted upon by the parties. The plaintiff testifies that he seeks to recover upon the agreement both verbal and written.

Verbal or written, or in part verbal and in part written, a contract not attested by seal is only parol, but the written part, being the better evidence, excludes spoken words contradicting the written part or contrary to it. (See 1 Pars. Cont. [8th ed.] § III, and cases cited; *Eighmie* v. *Taylor*, 98 N. Y. 288.) I think the obligation is joint. " The names of parties appearing in the instrument as covenantees create in them a legal interest according to which, if no higher interest appear in some of them, all must be made parties plaintiff." (9 Cyc. 661, citing *Anderson* v. *Martindale*, 1 East, 497. See, too, *Gilleran* v. *Springfield L. I. Cemetery Society*, 176 App. Div. 168.) But the point of non-joinder of Wells is not well taken, because there had been a severance by the defendant. The reason for the rule of joinder is to prevent multiplicity of suits, and the increased expense to the debtor, but if the debtor " chooses to waive the protection which the law has provided him, no legal objection can be urged against it." (*Carrington* v. *Crocker*, 37 N. Y. 336, 337.) Now there were three contracts with government. As to the first and second, Wells, a witness for the defendant, testifies that he had received " all the commission on the first two orders," referring, of course, to his share thereof. As to those two contracts the plaintiff could sue without joinder of Wells as a party. (*Lansing* v. *Bliss*, 86 Hun, 205.) There remains for consideration only the cause of action for the breach with respect to the third contract. The defendant contends that it lawfully discharged the plaintiff betimes so that there was neither liability for commission nor for a breach of the agreement for his services. And it appears that shortly after the time of the alleged discharge Wells gave notice to the plaintiff that their relations were at an end and that any orders that Wells might obtain would be " my orders, and I will be solely entitled to a commission." And Wells testifies that thereupon he individually and the defendant made a contract that he should receive one per cent commission for his services, instead of the three per cent theretofore provided with respect to Wells and the plaintiff. There is testimony that such agreement had sufficiently been carried out, for the defendant's treasurer, David Pines, testifies that defendant had paid Wells $3,460. And it was stated by both

parties at the close of the case that the commissions as claimed by plaintiff on the first order would be $102.95; under the second order, $1,216.04. Now as the commissions were to be divided equally between plaintiff and Wells, that sum represents Wells's commissions on the first and second orders, namely, $1,318.99, and the difference between that amount and the $3,460 paid to Wells, or $2,141.01, obviously was applicable to Wells's commissions on the third order. In *Kromer* v. *Heim* (75 N. Y. 574, 576) the court, per Andrews, J., say: " The rule that a promise to do another thing is not a satisfaction, is subject to the qualification that where the parties agree that the new promise shall itself be a satisfaction of the prior debt or duty, and the new agreement is based upon a good consideration, and is accepted in satisfaction, then it operates as such, and bars the action. (*Evans* v. *Powis*, 1 Exch. 601; *Kinsler* v. *Pope*, 5 Strobhart, 126; Pars. on Cont. 683, note.) " And it is declared in *Carrington* v. *Crocker* (*supra*): " The debtor, however, may, by a new contract, bind himself to account to the individual creditors for their respective interests in the demand, and such contracts are susceptible of being enforced."

Further, in *Boston & Maine Railroad* v. *Portland, etc., Railroad* (119 Mass. 498, 499), as to severance the court, per Gray, Ch. J., say: " It has long been a settled rule in this Commonwealth, in accordance with the law as understood in England at the time of our Revolution, that when a person, answerable in contract to two jointly, settles with one of them, so that that one has no longer any real interest in the matter in dispute, it is a severance of the cause of action, and the debtor is liable in an action at law to the other alone. Lord Mansfield, in *Garret* v. *Taylor* (1764), and *Kirkman* v. *Newstead* (1776), 1 Esp. Dig. 117. 1 Chit. Pl. (2d Am. ed.) 7. *Austin* v. *Walsh*, 2 Mass. 401, 405. *Baker* v. *Jewell*, 6 Mass. 460, 461. *Holland* v. *Weld*, 4 Greenl. 255. *New Braintree* v. *Southworth*, 4 Gray, 304, 306. *Sawyer* v. *Steele*, 4 Wash. C. C. 227, 228." (See, too, *Holland* v. *Weld*, 4 Maine, 255, 257, citing *Baker* v. *Jewell*, 6 Mass. 460; 1 Bates Pleading, 53, 55, citing *Curry* v. *Kansas, etc., Ry.*, 58 Kan. 6.) Indeed, if the plaintiff had made Wells a party,

then on the plea of misjoinder the language of the court per LAUGHLIN, J., in *Cobb* v. *Monjo* (90 App. Div. 85, 86) would be pertinent: " They wish to recover a money judgment jointly in which one will have a two-thirds and the other a one-third interest. Except in those cases where the interests of numerous parties are similar and the Code permits one party to bring an action for the benefit of himself and all others similarly situated, the plaintiffs must be all interested in the causes of action stated; and if they are not a demurrer for misjoinder of parties plaintiff will lie. This proposition is too clear to require the citation of authorities."

It is contended that the court erred in not admitting the said agreement between defendant and Wells that provided for only one per cent commission to Wells. The argument is that this agreement was made by Wells as a partner of the plaintiff or joint venturer, and that the agreement was relevant in reduction of damages in that the commissions agreed upon were but one per cent in lieu of three per cent. But even if there had been either relation, yet when Wells made this agreement for one per cent he had theretofore dissolved that relation with the plaintiff (See *Spears* v. *Willis*, 151 N. Y. 443), and hence he could not bind the " copartnership " by this agreement. (*Lansing* v. *Gaine*, 2 Johns. 300; *National Bank* v. *Norton*, 1 Hill, 572.)

It is contended that the plaintiff was entitled to commissions only after delivery of the merchandise to government. This turned upon the interpretation of the word " orders." The word is ambiguous; it may mean the requisitions for the stuff, or it may mean by a sort of metonymy the stuff itself. The services as described were all preliminary to the doing of the work by the defendant. I think that the general rule applies that the commissions were payable when the service was complete. By analogy, see *Gilder* v. *Davis* (137 N. Y. 504); *Davidson* v. *Stocky* (202 id. 423); *Guarantor Realty Corporation* v. *Barnum* (172 App. Div. 9). As the action was begun after the requisitions were received by the defendant, it was not premature. (*Woodward* v. *Stearns*, 10 Abb. Pr. [N. S.] 395.)

As to the third contract, I think that there were questions for the jury as to the discharge and the alleged breach of

employment. The defendant contends that it lawfully and betimes had discharged the plaintiff. *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378) is cited as authority. In that oft-quoted case the court, per FINCH, J., is careful to write that the authority of the broker must be terminated "*fairly and in good faith.*" The evidence is sufficient to justify a finding that the discharge of the plaintiff was not fair and in good faith, but was prompted by the belief that the defendant had found a competent substitute for the plaintiff, and one who was willing to serve the defendant for less pay. As to the character of the services, it appears that the plaintiff is an attorney-at-law. He had been on more or less intimate terms with the officers and owners of the defendant and had acted theretofore as their agent or attorney. It was he who suggested and urged the undertaking of a new branch of manufacture by the defendant with the prospect of contracts with government. When the defendant hung back, he persuaded the defendant to permit him to seek the contracts upon commissions contingent on his success. The activity of the plaintiff was in procuring the orders, in arranging all of the preliminaries, and the activity of the defendant was only the doing of the work. The three orders were articulated in character and in customer, and the orders required services of the like character. It was a fair question for the jury whether the discharge of the plaintiff was not a breach of an agreement that contemplated remuneration for the plaintiff's services in all three contracts.

I do not understand that an agreement to pay commissions on government orders is against public policy and, therefore, void. In *Oscanyan* v. *Arms Co.* (103 U. S. 261) the court, by FIELD, J., lays down the principle (p. 275): " So, too, with reference to furnishing the government with arms or supplies of any kind. It is legitimate to lay before the officers authorized to contract, all such information as may apprise them of the character and value of the articles offered, and enable them to act for the best interests of the country. And for such services compensation may be had as for similar services with private parties, either upon a *quantum meruit,* or, where a sale is effected, by the ordinary brokerage commission." *Beck* v. *Bauman* (105 Misc. Rep. 584), cited in

the points of counsel for the appellant, has since been reversed (187 App. Div. 774). *Oscanyan* v. *Arms Co. (supra)* discusses *Tool Company* v. *Norris* (69 U. S. [2 Wall.] 45) (also cited to us), to the conclusion that it is legitimate to reach the reason of those sought to be influenced. I cannot put my finger upon any fact that would justify a finding that the agreement even tended to corrupt or to back-stairs work or to base appeals for favoritism by plaintiff or by Wells, or to the doing of any act injurious to the public. The defendant was owned and administered by plain business men, and the services rendered seem to me not superfluous but substantial in all of the details save the actual doing of the work.

I advise affirmance, with costs.

Present — JENKS, P. J., MILLS, RICH, KELLY and JAYCOX, JJ.

Judgment and order unanimously affirmed, with costs.