LAKE *v.* WILSON.

Opinion delivered January 12, 1931.

*Powell, Smead & Knox*, for appellant.

*R. E. Wiley*, for appellee.

MEHAFFY, J. Some time in the early part of the year 1925, F. C. Nickel employed John Bruce Cox, a lawyer at El Dorado, Arkansas, to collect from John Dashko a commission alleged to have been earned by said Nickel on a $250,000 oil and gas lease sale. He agreed to pay said John Bruce Cox twenty-five per cent. of the amount recovered. After spending some time in an effort to adjust the matter without suit and failing to do so, Cox, with the consent of Nickel, employed J. R. Wilson, another lawyer at El Dorado, Arkansas, to assist him in the case.

Suit was brought in the Union Chancery Court for Nickel against Dashko, and both Wilson and Cox took part in the preparation and trial of the case. While the trial was in progress, Dashko was asked where the money received by him for the lease was deposited. Objection was made to this question but the court held that the witness must answer the question. Dashko, through his attorneys, then offered, instead of answering the question, to execute a bond to satisfy any judgment that might be rendered against him. This was agreed to, and a bond was executed by Dashko with P. G. Lake as surety. This bond was filed and approved. The trial court rendered judgment in favor of Nickel against Dashko for $500.

The judgment of the trial court was unsatisfactory to Nickel and to his attorneys, and it was decided that the case should be appealed to the Supreme Court. The attorneys, however, thought that the fee originally agreed on between Cox and Nickel, twenty-five per cent., was too small, and after a conference a new contract was entered into as follows:

"El Dorado, Arkansas,
"October 27, 1926.

"Messrs. Jno. Bruce Cox
and J. R. Wilson,
"Attorneys at Law,
"El Dorado, Arkansas.

"Gentlemen: Pursuant to our conversation on May 13, 1926, in your office, in which I agreed to give you a fee of $5,000 provided you win the $12,500 judgment asked for in the case against John Dashko in the Supreme Court, I now desire to confirm that agreement by this letter, and will say that if you win judgment in the sum of $12,500, I will pay you $5,000 out of the proceeds of said judgment, and, in the event the judgment is cut down in any sum below that, then the fee will be *pro rata*. This is a new contract, and supplants the old contract which was made on a basis of 25 per cent. of the recovery, and our rights will be determined by this contract, without any regard to that contract.

"Witness my hand, this the 27th day of October, 1926.

(Signed) "F. C. Nickel."

This new contract was accepted by the attorneys and the appeal was perfected. The Supreme Court reversed the decree of the trial court and remanded the cause with directions to enter a decree in favor of Nickel for $12,500 and also against the sureties on the bond given for the performance of the judgment.

On the 7th day of November, 1927, J. R. Wilson filed suit in the Union Chancery Court against F. C. Nickel, John Dashko, P. G. Lake, John Bruce Cox, H. P. Smead, trustee, H. P. Smead, R. C. Knox and Lamar Smead, doing business under the firm name of Powell, Smead & Knox. The parties named were named as defendants and garnishees.

In the complaint filed by Wilson, the employment of John Bruce Cox by Nickel and the employment of Wilson thereafter with the consent of Nickel are alleged, and the

appellee alleged also in this complaint that under the terms of the contract he was entitled to 20 per cent. of the recovery, J. B. Cox was entitled to 20 per cent., and that Nickel was entitled to 60 per cent. of the judgment, less $118.76 that Wilson had paid for printing abstract and brief. He also alleged that J. B. Cox was indebted to him in the sum of $1,014.17 with interest at 8 per cent., evidenced by promissory note, and that said Cox was also indebted to him on open account in the sum of $515.10 with 6 per cent. interest. It was alleged that these amounts represented the balance due Wilson by J. B. Cox on office rent. It was also alleged that J. B. Cox was insolvent, and Wilson asked that the interest of J. B. Cox in and to the fee due from Nickel be impounded and subjected to the payment of the items herein claimed, and that he was entitled to have the same impounded by equitable garnishment.

The prayer of Wilson was that the rights of F. C. Nickel, J. R. Wilson and J. B. Cox in and to the judgment against John Dashko and P. G. Lake be declared and fixed by the court, and for judgment for plaintiff and for judgment against the said J. B. Cox for the sums mentioned, and that the interest of the said J. B. Cox as declared by the court be impounded and subjected to the payment of the judgment as equitable garnishment. He also asked that his pleading be treated as an equitable garnishment against P. G. Lake, F. C. Nickel, John Dashko, H. P. Smead, trustee, and H. P. Smead, R. C. Knox and Lamar Smead, doing business under the firm name of Powell, Smead & Knox, attorneys, and asked that summons be issued against the parties named directing them to answer and show cause why the plaintiff should not recover the sums asked for in his complaint, and why the funds therein referred to should not be subjected to the payment of the claim of the plaintiff, and that summons issue against the said J. B. Cox directing him to answer and show cause, if any he can, why personal judgment should not be rendered against him in

the sum claimed by plaintiff herein, and why his interest in the judgment above mentioned should not be subjected to the payment of said plaintiff. He also asked for a restraining order and that the parties named be restrained from disbursing any part of the funds that might be found due said J. B. Cox and plaintiff and directing the same to be paid into the registry of the court and delivered to plaintiff upon final judgment as to such sums as plaintiff may be found entitled to recover, and that the defendant, J. B. Cox, be treated as a defendant, and that a judgment *in personam* be rendered against said J. B. Cox in accordance with the prayer and allegations herein, etc.

On the third day of December, 1927, the appellee, J. R. Wilson, filed in the case of F. C. Nickel against J. Dashko a petition to enforce his attorney's lien. In that petition he alleged that he had theretofore on the 7th day of November, 1927, filed in the above-styled cause a petition for judgment on the mandate and further alleged in his petition for lien that by virtue of his contract with Nickel he is entitled to the sum of $2,500 with interest; that said contract was made about the 13th day of May, 1926, and that the same was in writing; that the substance of said contract was that the petitioner was to have a fee of $2,500 or one-half of $5,000; that the mandate showed that the appeal was won and judgment directed to be entered for $12,500 against Dashko. He then described the work he did in preparing and trying the case, and that Nickel has refused to pay his fee. He also stated that petitioner had been notified by Nickel to take no further steps in the case, and he made sufficient allegations in his petition for a lien to entitle him to a lien.

The record shows that Mr. Nickel wrote Mr. Wilson a letter dated November 20, 1927, asking Wilson to take no further steps and telling Mr. Wilson that he desired Mr. Cox to be in exclusive control of the matter. Mr. Wilson testified, however, that he did not receive this

letter before Tuesday the 22d, and that, on Monday the 21st before this letter had been received, the judgment in the case of Nickel against Dashko had been paid to J. B. Cox, one of the attorneys, and the judgment had been satisfied on the record.

There is a great mass of evidence, but the rights of the parties must be determined by the contract, and only such evidence will be copied or referred to as appears necessary to an understanding of the rights of the parties under the contract.

Appellee first contends that one purpose of our lien statute is to protect attorneys against collusive settlement, and that that purpose is specially applicable in this case. Appellants argue at length that Mr. Wilson devoted a great deal of time and labor and some money in the preparation and trial of the case. We deem it unnecessary to set out this evidence, but it is sufficient to say that the proof is abundant that Mr. Wilson spent a great deal of time and labor, the result of which was a favorable judgment for his client. The evidence as to the time and labor given to the performance of his duties and as to the money expended for printing briefs is undisputed.

Appellee argues that our lien statute will protect him and cannot be avoided by the principles argued by appellants, and he says that Cox and Wilson were not jointly employed by Nickel, but that Cox was consulted and employed and a fee of twenty-five per cent. promised him; that contract was between Nickel and Cox and, of course, was not joint. We agree with appellee in this statement. The first contract of employment was between Nickel and Cox. Wilson was not a party to it and knew nothing about it. Thereafter Cox employed Wilson, or, as they put it in the evidence, told Wilson he would cut him into the case. If it had ended there, Wilson would simply have been in the employ of Cox, but Wilson was introdued to Nickel, and Nickel consented for him to associate himself with Cox and to assist in the case. Nothing further was said about fee until after the case had been tried

in the lower court. However, after Wilson came into the case with the consent of Nickel, he would have had under the original contract a lien for his fee. That contract was not joint.

But the contract entered into on the 27th day of October 1926, was a joint contract and shows on its face that it was the result of a conversation of May 13, 1926. That contract did not provide for giving Wilson $2,500 and Cox $2,500, but it expressly stated that Nickel had agreed to give them a fee of $5,000, provided they secured a judgment for $12,500. As between Nickel on one hand and Cox and Wilson on the other, the contract is plain and unambiguous, and it expressly states: "This is a new contract and supplants the old contract which was made on a basis of twenty-five per cent. of the recovery and our rights will be determined by this contract without regard to that contract." The contract containing the above quoted clause was accepted by the attorneys, Cox and Wilson. Moreover, the suit filed by the appellee in this case is based on that contract. The contract is a joint contract, and unquestionably under that contract Cox and Wilson would have a lien for their services, a lien on the judgment or funds that they recovered. The judgment had already been paid before the lien was filed.

Payment of a debt to one of the joint obligees in a contract is sufficient payment, and in this State the payment may be made to an attorney of record. The lien created by statute can exist only when there is a debt, and if there has been the payment of the debt there could not be any lien.

"A lien is discharged by a proper and sufficient payment of the debt or obligation which it secures." 37 C. J. 339.

It will be conceded that, if a payment to Cox was a sufficient payment by the debtor, then Wilson could have no lien. A lien is merely security for the payment of a debt. A lien is a claim which one person has upon the property of another as security for some debt or which

is a right to claim satisfaction of the debt out of the property, and, if there is no debt, of course there can be no claim which one person might have on the property of another. A lien is simply a security given by law to secure the payment of money, and the lien given by statute to an attorney is as much security as a mortgage, but the lien given by statute, like the lien created by mortgage, is for the purpose of securing a debt, and, if the debt has been discharged, there is no longer a lien. Therefore, if Cox, as one of the joint obligees, had the right to collect the judgment and had the right to enter satisfaction on the record, the doing of this by him discharged the lien.

Payment of a debt may be made only to a creditor, of course, or to his assignee, and payment to any other person would not, of course, extinguish the debt, but where two persons are joint creditors, as Cox and Wilson were here, payment may ordinarily be made to either of them. 48 C. J. 590.

The payment of a debt to a creditor, no matter by whom effected, is an extinguishment of the demand.

"The proposition that a debt, as between the debtor and creditor, can only be discharged by the payment by the debtor, or his agent, is a palpable solecism; for we are clear that the payment of a debt, no matter by whom effected, can be nothing more or less than its extinguishment as a demand, notwithstanding the concession, which we think proper to make, i. e., that the payment of a debt by a stranger to the debtor might not and would not possibly create and constitute the original debtor a debtor to the volunteer." Owens v. Chandler, 16 Ark. 650.

A contract with two or more persons for the payment to them of a sum of money is a joint contract with all, and all the payees have a joint interest, and no one of the obligees in a joint contract can sue alone for his proportion. The joint promisees in a joint contract must all, if alive, join in the action. They cannot sue separately. Page on Contracts, vol. 4, § 2079; Rainey v. Smizer, 28

Mo. 310; *Thielman* v. *Goodnight,* 17 Mo. App. 429; *Slaughter* v. *Davenport,* 151 Mo. 26, 51 S. W. 471; *Henry* v. *Mt. Pleasant Township,* 70 Mo. 500; 21 R. C. L. 30; Thornton on Attorneys at Law, § 561.

In August, 1876, the county court of Conway County employed two lawyers to get the lands belonging to the railway company in Conway County properly assessed and listed for taxation. Under the contract the lawyers were to receive a fee of ten per cent. upon the amount of taxes that should be realized. A compromise was agreed to by which the railway company was to pay and did pay $8,506.94. This amount was paid to one of the lawyers. Of the sum collected the attorney accounted for $6,060.55 and died insolvent. He should have accounted for $7,656.25. The county sued the railway company for the balance. The court said: "We make no doubt that the company in paying the mortgage to Reid acted in perfect good faith. The only interest it could have had in the matter was to discharge the lien or claim for taxes. It was natural to suppose that the attorney who had obtained the judgment was the proper party to whom payment should be made. Ordinarily an attorney is authorized by virtue of his retainer to collect the judgment and execute in the name of his client a proper acquittance therefor." *Conway County* v. *L. R. & Ft. S. Ry. Co.,* 39 Ark. 50.

In the last above case Reid and Henry, two attorneys, were employed and were to be paid a fee of ten per cent. of the amount recovered, not five per cent., to Reid and five per cent. to Henry, but ten per cent. to Reid and Henry. Reid collected the money and entered satisfaction on the record, just as Cox did in this case.

Cox and Wilson, having entered into a joint contract, had the right to collect the judgment and enter satisfaction on the record, and since it was a joint contract either Cox or Wilson had this right, and the debtor had a right to pay it to either of them. Mr. Wilson could have collected the money or Mr. Cox could have collected it. Not

only is this a joint contract, but the appellee, Mr. Wilson, wrote the contract. According to his testimony, he had in mind at the time that he was to receive $2,500 and Mr. Cox $2,500. However this may be, when he dictated the contract he made a joint contract, employing both Wilson and Cox, and expressly canceled the former contract which was not joint. And the appellee so wrote the contract that it is plain and unambiguous, and oral testimony is not admissible to contradict its terms.

Appellee states that the appellants rely chiefly on the case of *Henry* v. *Mt. Pleasant Township*, 70 Mo. 500, and says that appellants have quoted largely from that opinion but did not quote the last few lines. The last few lines which were not quoted by appellants are as follows: ''The cases to which we have been cited as establishing the doctrine that when one is liable to two or more on a joint contract, and settles with either for his part of the claim, the remaining promisee may sue without joining the other, on the ground that such a settlement is to be regarded as a severance of the cause of action do not apply to the case as made in plaintiff's petition. The settlement and payment made to Bassett was not a part but the whole amount of the claim, and satisfied the obligation not only as to Bassett but also as to plaintiff.''

The same thing is true in the case at bar. The payment to Cox was not of a part but of the whole amount of the claim, and the payment of the whole to one of the joint obligees satisfies the obligation, not only as to the one receiving the money, but also as to the other joint obligee. The payment of the whole amount to Cox satisfied the obligation as to Cox and as to Wilson also.

Appellee next calls attention to the rule as stated in 33 C. J. 874. The rule referred to is as follows: ''Ordinarily in an action brought upon a debt due to those engaged in a joint adventure, all of the members thereof must be joined as parties plaintiff; but it has been held that if some of the joint adventurers refuse to join in the action because of their complicity with the defendant

who had misappropriated the funds of the business the others may sue at law for their proportionate shares of the money misappropriated without joining their involved associates."

The paragraph immediately preceding the paragraph cited by appellee in 33 C. J. 874 reads as follows: "Where joint adventurers do work for a third person who pays either one of them, the payment is a discharge of the obligation as to both or all."

No such case as that exists here. Immediately following the above quotation is: "Where a debt due to two or more joint adventurers has been partially discharged by the payment to one of them of his share of the debt, his associate or associates may sue for the remainder without joining him as a plaintiff."

If Cox had been paid his portion of the judgment only, the judgment debtor could then have been sued by Wilson, who could recover his share or proportion, but the undisputed proof is that the entire amount was paid to Cox, and Cox accounted to Nickel for only one-third of the fee. Unquestionably either Cox or Wilson had the right to collect the entire fee, and if this had been done by either of them and the one collecting the amount had not accounted to Nickel for any portion of it, the other would have no cause of action against Nickel.

Appellee next calls attention to *Schwartzman* v. *Pine Rubber Co.*, 189 App. Div. 749, 179 N. Y. S. 284. In that case the court said the obligation was joint and continuing; said that the names of the parties appearing in the instrument as covenantees create in them a legal interest according to which, if no higher interest appear in some of them, all must be made parties plaintiff. The court in that case also held that the debtor might name this, and that if he elected to pay one his portion the other could maintain a cause of action, but if the entire debt was paid to one of the joint obligees the debtor was discharged.

In the case of *Lansing* v. *Bliss*, 86 Hun 205, 39 N. Y. S. 310, the court held that where a person was liable to two or more on a joint contract and settled with one of them his part of the claim, this did not discharge the liability to the others.

Appellee cites and relies on the case of *Lawson* v. *Mo. & Kan. Telephone Co.*, 178 Mo. App. 124, 164 S. W. 138. There was no joint contract involved in that case, but the contract of employment was very similar to the original contract in this case. Lawson employed and associated other lawyers with him just as Cox was originally employed in this case and associated Wilson with him with the consent of the client. There was no joint contract in the Lawson case, but the court held that the payment to one of the attorneys was a satisfaction except as to the lien of a lawyer who was not a joint obligee with the other attorneys.

When a client retains a firm, he is presumed to be entitled to the united exertions of all the partners. * * * If attorneys who are co-partners accept a retainer, the contract is joint, continuing to the termination of the suit. Demand on one is also constructively a demand on both, and renders both liable. Weeks on Attorneys at Law, 498; Thornton on Attorneys at Law, vol. 1, 324.

The contract with Cox and Wilson was a joint contract, and the duties and liabilities of each of them was the same as if they had been partners. When a firm of attorneys is employed, or any two or more attorneys employed under a joint contract, the act of any one of the lawyers so employed is binding on all, and either has the right to collect the entire fee. Of course, if either Cox or Wilson collected the entire fee and did not account to the client for it, the one so collecting the fee would be liable to the other party for his portion of the fee. Since either of the attorneys had the right to collect the entire fee and thereby relieve the client of all obligations to the other attorney, when Cox collected the entire fee in this case, he became liable, or would have been liable, to

Wilson for Wilson's portion of the fee, but the client would not have been liable; but the undisputed proof shows that Cox accounted to Nickel for one-third of the $5,000. Nickel, by accepting this, agreed to a severance, and thereby became liable to Wilson for the amount of the fee that he received from Cox. Of course, if this was not all the fee to which Wilson was entitled, Cox would have been liable for the difference between what he paid and the amount of Wilson's fee. In other words, if Wilson was entitled to one-half of the $5,000, when Cox collected it, he would have been liable to Wilson for $2,500. Having accounted to Nickel for a portion of this, and Nickel having accepted it, Nickel became liable to Wilson for the amount he received, one-third of the $5,000.

It is contended by appellee that there was never any authority given Cox making him Wilson's agent. As we have already said, the contract was a joint contract, and under that contract either attorney was bound by the acts of the other attorney. The difference between this case and the cases relied on by appellee is that in this case there was a joint contract, and the relation was the same as if Cox and Wilson had been members of a law firm or partners, and the cases relied on by appellee are cases where there was no joint contract, and where neither attorney had a right to collect the fee of the other. An attorney's lien may always be discharged by payment of the fee or debt to any one authorized to collect it. It does not appear from the evidence just when Cox accounted to Nickel for Wilson's part of the fee. It does appear, however, that Cox claimed that Wilson was entitled to only one-third of the $5,000 fee, and that this is the amount for which he accounted to Nickel.

It is unnecessary for us to determine whether Wilson was entitled to one-half of the fee or one-third of it because under the facts in this case Nickel would only be liable for the amount that he received because Cox had authority to collect the whole fee.

Wilson, having performed the services, and the undisputed proof shows that Nickel received from Cox one-third of the $5,000 which unquestionably belonged to Wilson, became liable to Wilson for this amount. Dashko paid the entire judgment to the proper party, and, having done this, he was not liable to Mr. Wilson. If Dashko had paid the judgment to Nickel without paying the attorney's fee, he would have been liable for the attorneys' fees, and the attorneys would have had a lien on the funds in his hands to secure the payment of the fee. But, since Dashko paid the entire judgment to one of the attorneys who had a joint contract for fee, he is not liable to either Nickel or Wilson, or any one else. Dashko had given a bond to pay the judgment that Nickel might recover against him in the suit of Nickel v. Dashko, but the condition in that bond was as follows: "If the defendant, John Dashko, shall fully pay and satisfy any judgment that shall be finally adjudged against him in this action, then this bond shall be void, otherwise to remain in full force and effect." The bond was signed by Dashko and P. G. Lake, surety. In this bond they bound themselves to fully pay and satisfy any judgment that might be rendered against Dashko. A judgment was rendered against Dashko in that action, and it was fully paid and satisfied by paying the money to J. B. Cox, one of the attorneys. When this judgment was paid to Cox, there was no longer any liability against either Dashko or Lake. The judgment against them in this case is erroneous. J. R. Wilson is entitled to recover against F. C. Nickel one-third of the $5,000 with interest from the date the judgment was paid to Cox at the rate of six per cent. per annum, till paid. He is also entitled to a judgment against F. C. Nickel for $118.76 with interest at the rate of six per cent. per annum from December 3, 1927.

It is next contended by appellee that there should have been a judgment against Cox, and that the finding of the chancery court in Cox's favor should be reversed.

The case against Cox was dismissed by Wilson with prejudice. A dismissal with prejudice is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. *Union Indemnity Co.* v. *Benton County Lumber Co.,* 179 Ark. 752, 18 S. W. (2d) 327.

The suit of *Wilson* v. *Cox,* having been dismissed with prejudice, cannot be litigated again.

"The test of determining a plea of *res judicata* is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit." *Robertson* v. *Evans,* 180 Ark. 420, 21 S. W. (2d) 610; *Gosnell Special School District No. 6* v. *Baggett,* 172 Ark. 681, 290 S. W. 577; *Cole Furniture Co.* v. *Jackson,* 174 Ark. 527, 295 S. W. 970; *Prewett* v. *Waterworks Improvement Dist. No. 1,* 176 Ark. 1166, 5 S. W. (2d) 735.

"The rule has been often announced in this court that the judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit." *Morris & Co.* v. *Alexander,* 180 Ark. 735, 22 S. W. (2d) 558.

Since the suit against Cox was dismissed with prejudice, the decree of the chancery court on cross-appeal will be affirmed. The decree in favor of Wilson is modified and affirmed against F. C. Nickel in favor of J. R. Wilson for $1,666.66 2/3 attorney's fee and $118.76 for expenses with interest as stated above, and the judgment against Dashko and Lake is reversed, and the case against them dismissed. It is so ordered.

MEHAFFY, J., (supplemental opinion). This case was decided by this court on January 12, 1931. We held there that Wilson was entitled to recover against F. C. Nickel one-third of the $5,000 with interest and also the

sum of $118.76 and judgment was entered modifying the judgment of the lower court in favor of Wilson against Nickel.

Wilson had recovered a judgment in the court below against Nickel for $2,500 attorney's fee, and $118.76 for expenses.

Since the decision and the denying of the petition for rehearing, our attention has been called to the fact that F. C. Nickel did not prosecute an appeal to this court from the judgment of the lower court awarding J. R. Wilson a judgment against him, F. C. Nickel, for the $2,500 attorney's fee and the $118.76 expenses.

Since Nickel did not prosecute an appeal, the judgment here modifying the judgment of the lower court and rendering judgment against Nickel in this court was erroneous and that part of the opinion of January 12, 1931, is recalled and set aside and the judgment of the lower court in favor of Wilson and against Nickel of course is not affected by the judgment in this court, because Nickel did not appeal.

It follows, of course, that the judgment here, awarding one-half the cost of appeal against Nickel, is also erroneous and it is hereby set aside, and the cost is adjudged against the appellee, J. R. Wilson.