2 F.3d 824
 SULLIVAN, BODNEY AND HAMMOND, a Professional Corporation,
Appellee/Cross-Appellant,
v.
HOUSTON GENERAL INSURANCE COMPANY; National Development
Company, doing business as Bent Tree Harbor, Inc.,
Appellants/Cross-Appellees.
 Nos. 92-2945, 92-3077.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 16, 1993.
Decided Aug. 13, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 19, 1993.
 
 Gerald Edward Roark, Jefferson City, MO, argued (Kelly Pool, on brief), for appellant.
 Charles E. Hammond, Overland Park, KS, argued, for appellee.
 Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Houston General Insurance Co. and National Development Co., Inc., appeal the district court's judgment in favor of Sullivan, Bodney, and Hammond, P.C. (SBH), a disbanded law firm, on its statutory attorney's fee lien claim. We conclude that appellants' previous payment of the entire attorney's fee to a principal of SBH extinguished the lien. Accordingly, we reverse.
 
 I.
 
 2
 In 1984, Sheila and William Fleming retained Howard Bodney of SBH to represent them and their daughter Fonda in an action for personal injuries Fonda sustained while on National's property. The Flemings agreed to pay SBH a contingent fee equal to twenty-five percent of any recovery. SBH filed a diversity action in district court, at which time it acquired a statutory lien for its fee pursuant to Mo.Rev.Stat. Sec. 484.130.[1]
 
 
 3
 In June 1985, Bodney and his two partners, Robert Sullivan and Charles Hammond, agreed to disband the firm effective July 31, 1985, with the Fleming case, among others, still unresolved. Thereafter, the SBH principals practiced separately, though SBH continued to exist as a registered professional corporation. The firm's breakup was acrimonious; for example, in December 1985, Bodney told Hammond that the Fleming case was likely to settle for $1,000,000, but refused to give Hammond the name of the defense attorney.
 
 
 4
 The Fleming case settled for $1,000,000 a short time later. On February 7, 1986, the district court approved the settlement[2] and ordered appellants to pay Bodney a $250,000 attorney's fee in accordance with the settlement agreement. Appellants paid Bodney the full settlement amount, including the attorney's fee; Bodney then executed a document reciting "attorney's lien released." Without advising Hammond or Sullivan of the settlement, Bodney then deposited the $250,000 fee in his own account, used the money to purchase a home and pay estimated federal income taxes for 1986, and filed for bankruptcy.
 
 
 5
 After unsuccessfully seeking to recover a share of the fee from Bodney,[3] Sullivan and Hammond sought to force appellants to pay the Fleming attorney's fee again. In January 1989, after voluntarily dismissing a prior suit without prejudice, SBH commenced this action, alleging that appellants are liable for the entire $250,000 contingent fee because their prior payment to Bodney did not extinguish SBH's statutory lien. On October 18, 1989, the district court entered summary judgment awarding SBH two-thirds of the $250,000 fee. The court held that SBH retained its lien because the firm's principals had never agreed on the disposition of fees collected after the dissolution; it awarded SBH only two-thirds of the fee to reflect the fact that Bodney had already been paid his share. On appeal, this court reversed, concluding that a genuine issue of material fact existed as to whether the SBH principals had agreed upon the post-dissolution division of fees from ongoing matters such as the Fleming lawsuit. Sullivan, Bodney and Hammond v. Houston General Ins. Co., No. 90-1121 [938 F.2d 183 (Table) ] (8th Cir. Jan. 25, 1991) (unpublished).
 
 
 6
 Following a trial, the jury found by special interrogatories that, before the firm disbanded, the principals of SBH had reached an agreement for dividing any subsequent fee in the Fleming case--SBH and Bodney were to share the fee based upon the ratio of time spent on the case before dissolution versus time spent after dissolution. Based upon the jury's findings, the district court awarded SBH one-half of the Fleming fee, $125,000, because one-half of the total attorney hours on the case were spent prior to the July 31, 1985, dissolution. The court also awarded $71,537.67 in prejudgment interest to SBH. This appeal followed.
 
 II.
 
 7
 The Missouri statutory attorney's fee lien was enacted "to prevent frauds between attorneys, clients and defendants." Noell v. Missouri Pac. R.R., 335 Mo. 687, 74 S.W.2d 7, 10 (1934), quoting from the title of the original 1901 act. For example, the lien guards against a defendant settling directly with the plaintiff to avoid paying plaintiff's counsel's contingent fee. See Satterfield v. Southern Ry., 287 S.W.2d 395, 398 (Mo.App.1956); Bishop v. United Rys. Co. of St. Louis, 165 Mo.App. 226, 147 S.W. 170, 171-72 (1912). It also protects attorneys against the defendant who collusively pays an earned fee to the wrong attorney. See Myers, Perry, Ossman & Copeland, P.C. v. Cardinal Scale Mfg. Co., 615 S.W.2d 99 (Mo.App.1981). Missouri law provides an attorney a variety of remedies against a client or litigation adversary who attempts to avoid ("deforce") the attorney's lien. See Downs v. Hodge, 413 S.W.2d 519, 523 (Mo.App.1967).
 
 
 8
 In this case, there is no evidence that appellants colluded with Bodney to deprive SBH of its fee or its lien. Consistent with the district court's settlement approval order, appellants paid the entire settlement, including a $250,000 attorney's fee, to Bodney, the SBH principal who had personally represented the plaintiffs throughout the Fleming lawsuit. At appellants' insistence, Bodney signed an attorney's fee lien release when he accepted that payment. Though SBH had a lien on the settlement proceeds by reason of being attorneys of record for the Flemings, the threshold question is what effect the payment to Bodney had on SBH's lien. Although the parties have briefed and argued a number of other issues, this appeal is resolved by our conclusion that payment to Bodney extinguished the lien.
 
 
 9
 If a plaintiff separately retains independent attorneys to assist in litigation, each attorney has a separate lien and payment to one will not satisfy or extinguish the lien of the other. See Nelson v. Massman Constr. Co., 120 S.W.2d 77, 89-90 (Mo.App.1938), cert. dism'd, State ex rel. Massman Constr. Co. v. Shain, 344 Mo. 1003, 130 S.W.2d 491 (1939); Lawson v. Missouri & Kan. Tel. Co., 178 Mo.App. 124, 164 S.W. 138, 141 (1914). On the other hand, when a client is represented by members of a law firm that holds the lien, members of the firm are joint obligees, and payment to one satisfies or extinguishes the firm's lien. See Nelson, 120 S.W.2d at 87; Lake v. Wilson, 183 Ark. 180, 35 S.W.2d 597, 601 (1931) ("When a firm of attorneys is employed ... the act of any one of the lawyers so employed is binding on all and either has the right to collect the entire fee"); Restatement of Contracts 2d Sec. 299.
 
 
 10
 Thus, if Bodney had been a principal in an active, on-going law firm when appellants paid him the entire $250,000 attorney's fee and obtained his lien release, payment would clearly have extinguished the lien. The question is whether the firm's prior dissolution changed the normal rule that payment to one member of a law firm satisfies the firm's lien. That precise issue was considered in Nelson; the court concluded that the issue turns on a question of fact--whether "members of the dissolved law firm ... treated the fees belonging to the firm at the time of dissolution as partnership business." If as in Nelson they did, they remained joint obligees and payment to one would satisfy the firm's lien. 120 S.W.2d at 87.
 
 
 11
 The district court acknowledged this issue in the initial phase of this litigation. In a November 29, 1989, order denying appellants' motion to amend the court's grant of summary judgment, the district court stated:
 
 
 12
 Defendants cite Nelson v. Massman Construction Co., 120 S.W.2d 77 (Mo.Ct.App.1938), in support of their assertion that the lien had been satisfied by Mr. Bodney's release. The Nelson court held that payment of an attorney fee to one member of a firm dissolved prior to payment bound the other members of the firm. The fact pattern in Nelson cannot be compared to that in the instant case. The Nelson court found persuasive the fact that the partners treated all unfinished business as partnership business, and that there was evidence of profit sharing after dissolution of the firm. In the instant case, Bodney testified that there was no profit sharing arrangement between SBH and himself, and that all contingent fee cases were his sole property. There is no evidence in the record that the members of SBH treated unfinished business as partnership business, or that profit sharing occurred after dissolution of SBH. Therefore, Nelson does not apply to the instant case.
 
 
 13
 We rejected the district court's reliance upon Bodney's testimony and remanded for a trial to determine "the existence and terms of the agreement between the Sullivan shareholders." When the jury subsequently found such an agreement, the district court erred in failing to revisit the Nelson issue.
 
 
 14
 After trial, the jury found that the dissolving SBH principals agreed that the firm retained an interest in cases still unresolved as of July 31, 1985, and would share in any subsequent fee based upon a time-before-dissolution/time-after-dissolution formula. The record clearly supports this finding, revealing that both Hammond and Sullivan continued to treat those cases as though they were, at least in part, assets of SBH. Based upon the jury's findings, we conclude that the SBH principals, like the law partners in Nelson, remained joint obligees because they agreed that fees earned by the firm at the time of dissolution--the time-before portion of the total Fleming fee--remained firm business. Thus, appellants' payment to Bodney extinguished the firm's lien.
 
 
 15
 Finally, we reject the suggestion in the district court's November 29, 1989, order that the rule in Nelson does not apply in this case because Nelson involved a partnership and SBH was a professional corporation. States have allowed attorneys to form professional corporations primarily to permit access to tax advantages available to corporate employees. See Fox v. Abrams, 163 Cal.App.3d 610, 210 Cal.Rptr. 260, 265 (1985). To preserve integrity and professionalism, however, "[i]n substance, insofar as the relationship of attorney and client and of attorney and the general public is concerned, practice in corporate form will be ... substantially similar to the practice of law as it presently exists in firms operating as law partnerships." In re Rhode Island Bar Assoc., 106 R.I. 752, 263 A.2d 692, 698 (1970). See also Mo.Rev.Stat. Sec. 356.171 (employees of professional corporations do not enjoy limited liability for their professional services). We do not believe that the Supreme Court of Missouri would allow members of the Missouri bar to expand their rights against litigation clients and adversaries simply by conducting business in the corporate form. Therefore, the Nelson principle applies to SBH, and the jury's findings compel the conclusion that SBH's lien in the Fleming lawsuit was extinguished by appellants' payment of the entire fee to Bodney.
 
 
 16
 The judgment of the district court is reversed and the case is remanded with instructions to dismiss SBH's complaint.
 
 
 
 [1]
 Section 484.130 provides in relevant part:
 From the commencement of an action ... the attorney who appears for a party has a lien upon his client's cause of action ... which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.
 
 
 [2]
 Court approval was required because Fonda Fleming was a minor. See Mo.Rev.Stat. Sec. 507.184
 
 
 [3]
 Bodney's shenanigans generated protracted state court litigation among the former SBH principals. See Sullivan, Bodney & Hammond v. Bodney, 16 Kan.App.2d 208, 820 P.2d 1248 (1991). In a cross appeal, SBH argues that appellants are bound by the Kansas state court rulings under the principles of collateral estoppel. This contention is totally without merit, if, for no other reason, because appellants were not parties to that litigation. See Hudson v. Carr, 668 S.W.2d 68, 70 (Mo. banc 1984); Oates v. Safeco Ins. Co., 583 S.W.2d 713, 719 (Mo. banc 1979)