## UNITED STATES v. HART.

### No. 6248.

Circuit Court of Appeals, Third Circuit.

June 23, 1937.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, Thomas G. Carney, Sp. Assts. to the Atty. Gen., Charles D. McAvoy, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for the United States.

W. L. Fox, Paul Freeman, and Freeman, Fox & Steeble, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS and BIGGS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears that Mrs. Fisher made income tax returns for 1927, 1928, and 1930 and died thereafter. While her estate was in administration, the tax authorities conceded that she was entitled to a refund and sent a check therefor to her executor. Subsequently he filed his final account. It was duly audited and according to the Pennsylvania practice on such final audit, all claimants against the estate and other parties in interest had an opportunity to be heard. The court, after payment of claims and legacies, made final distribution and decreed the balance shown in the account should be paid to Anna Scott Hart, who was the residuary legatee of the estate. Some considerable time thereafter the tax officials changed the ruling and held the refund to Mrs. Fisher had been erroneously made. Thereupon an action in assumpsit was brought in the court below by the United States against the residuary legatee to recover the amount of such alleged erroneous refund. Thereafter a jury was waived and the case tried by the judge, who found a verdict and entered judgment in favor of the defendant.

After examination of the authorities involved, we find no error on the part of the court below. As we view the cases, the right to recover back money voluntarily or mistakingly paid turns on the fact of whether a defendant is in equity and good conscience obligated to return such fund. Where the money has been received and where the reception of it was illegal, recovery can be had. In Clarke v. Shee, 1 Cowp. 197, Lord Mansfield drew this distinction and it was held that an action for money had and received would lie by the true owner of the money against a third person into whose hands it came, provided its identity could be traced or ascertained. In that case the facts were that money was intrusted by the plaintiff to his clerk, who misapplied the money and paid it to the defendants upon the chances of the coming up of tickets in a lottery, contrary to the Lottery Act of 1772. Referring to the right of action, Lord Mansfield said: "As to the latter question, whether the plaintiff had a right to recover? This depends upon whether the money was originally the plaintiff's property. If it was, and it appears that the defendants have no right to withhold it, the law will imply an assumpsit in this case. Now it is in evidence that the money was paid to the defendants for the insurance of chances, contrary to the express prohibition of the Stat. 12 Geo. 3, c. 36, which in that case makes the receipt null and void; therefore they are wrong doers, and have no right to withhold it. It is likewise in evidence that this was the identical money which Wood had received for his master's use; consequently, if the testimony of

988

Wood is admissible, the plaintiff is entitled to recover."

This view was taken by the Supreme Court of Pennsylvania in Hindmarch v. Hoffman, 127 Pa. 284, 18 A. 14, 4 L.R.A. 368, 14 Am.St.Rep. 842, where recovery was allowed on the facts there shown, to wit, one Savanack stole from the plaintiff a large sum of money, part of which he afterwards, on the same day, deposited with the defendant to be returned to him or upon his order. While the money was still in the defendant's possession and under his control, plaintiff claimed it as his property. Notwithstanding this, the holder of the money paid it to a third party on Savanack's order. It was there held that the money never belonged to Savanack. It was the plaintiff's money stolen by Savanack, and while it was in the control of the defendant, he was informed of the theft and that the plaintiff claimed it. The court said: "Under these circumstances, it was clearly his duty to hold it for plaintiff, and, upon satisfactory proof of ownership, to pay it over to him. From the existence of that duty the law raised an implied promise by defendant to do so. * *' * Justice demands that he should now be compelled to pay the amount to the rightful owner; and there is no good reason why it should not be recovered in the present form of action." The court cited Clarke v. Shee as justifying its decision. It further referred to Mason v. Waite, 17 Mass. 560, where a package of bank notes was delivered by the plaintiff to a carrier, who, without authority, paid them to the defendant for a loss at a gambling table. Gambling was forbidden by the laws of Massachusetts and was an indictable offense. So also in Forscht v. Green, 53 Pa. 138, where a stakeholder of an election bet, which was forbidden by law, was adjudged to pay the money back to the plaintiff; and to the same effect was McAllister v. Hoffman, 16 Serg. & R. (Pa.) 147, 16 Am.Dec. 556, where the money was likewise an illegal election bet.

■ From the above it will appear that in all these cases which are cited in support of the government's view, unlawful violations of statutes were involved. In the present case we have no element of that kind. The defendant, Anna Scott Hart, had no connection with the plaintiff, the United States government. She did not even receive the money from her mother. It was paid to her by a decree of court and was, therefore, legally paid, and without any obligation on her part to repay in the way of conscience or unfair dealing. Moreover, it has not been shown that the money she received was the money paid to the estate by the government. No privity existed between her and the government, and the court rightfully held that a suit could not be maintained against her.