**GRODSKY v. SIPE.**

**In re CASSELL.**

**No. 85–D.**

District Court, E. D. Illinois.

Jan. 6, 1940.

Leahy, Walther, Hecker & Ely, of St. Louis, Mo., for plaintiff.

Bookwalter, Carter & Gunn, of Danville, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff, a resident of Missouri, seeks to recover from defendant, trustee in bankruptcy of Charles Cassell, Bankrupt, resident of the State of Illinois, as trust funds, moneys in the estate, to reimburse her, as she alleges, for losses accruing because of the failure of the bankrupt as a testamentary trustee, to discharge certain legacies secured by real estate in which she holds a remainder. According to the complaint, Abraham Cassell died testate, May 19, 1915. By his will he bequeathed $12,500 each to Esther Sider and Sophia Sider, his minor nieces, to be held in trust by

Charles Cassell, the son of the testator and the bankrupt herein, and by him paid to the legatees when they should reach the age of thirty-five years. All the residue of the estate was devised to Charles Cassell for life with remainder to his children and the issue of any deceased child. The will declared that the testator intended that, upon the death of Charles Cassell, the entire residuary estate should vest in his children and that the issue of any deceased child should receive such portion as his parents would have taken had they been living. Plaintiff is the daughter of the bankrupt and has two minor children, Marilyn Joy and Goldie. The life tenant was executor and duly qualified and acted as such until later removed. He was adjudged bankrupt on March 4, 1933. The residuary estate included land in Illinois. The trustee in bankruptcy has collected the rents and profits therefrom, aggregating approximately $39,000, under the devise of the life estate to the bankrupt.

In October, 1934, the two legatees instituted in the Circuit Court of Iroquois County a suit in which they sought to impress upon the real estate a lien securing the legacies as against the life tenant and the remaindermen and a sale of enough thereof as would satisfy the legacies. They joined as defendants all persons having any interest in the real estate, including the bankrupt and the parties to this suit. On or about March 18, 1939, the court entered a decree finding that the estate contained no personal property and that the two legatees were entitled to a lien upon the realty to secure payment of their legacies; that each of the legatees had reached the age of thirty-five years, one of them after suit was begun, and that enough of the real estate should be sold to satisfy the legacies and the cost of the proceeding. The court retained jurisdiction to carry into effect the provisions of the decree and thereafter sold three tracts of land—the first, 191 acres, for $10,500; the second, 263 acres, for $18,150, and the third, 234½ acres, for $16,300. From the proceeds the legacies, less some credits to which the bankrupt, as trustee, was entitled because of his advancements to the legatees, were discharged in full. In addition, the court allowed and paid from the proceeds of sale trustee's and attorneys' fees aggregating some $10,000. There remains in the hands of the trustee appointed by the state court to execute the decree, a small balance undistributed.

Plaintiff alleges that the lands sold were reasonably worth in 1916 more than twice the amount for which they were disposed of in 1939; that the life tenant, Charles Cassell, stood in a fiduciary relationship to the remaindermen, charged with the duty of preserving the remainder; that, if he as trustee had diligently and promptly performed his duty and created a trust fund to satisfy the legacies, by selling enough land in 1916 and 1917 so to do, it would have been necessary to sell only one of the farms and that plaintiff's remainder in two of those sold would have been preserved; that because of the failure of the trustee to perform his duty as alleged, the residuary estate has sustained a loss of the remainder in properties sold for $28,200; that because of the misapplication of the trustee and his failure to create and protect the trust estate as aforesaid, the collection of income from the real estate, which should have been sold for the purpose of providing a trust fund, has produced moneys represented by the collections of the trustee in bankruptcy, thereby enriching the bankrupt estate at the expense of the remainder estate; that the trustee is preparing to distribute the fund in his hands to the creditors of Charles Cassell, Bankrupt, to the exclusion and detriment of the remaindermen; that the fund should be impressed with a trust and declared a security protecting the remaindermen from loss incurred because of the unnecessary sale of two of the farms, from all interest in which they have been foreclosed by the decree of the Circuit Court of Iroquois County; and that the remaindermen are entitled to have set aside for them, out of the assets of the bankrupt estate, the amount paid the two legatees, plus attorneys' fees and expenses allowed and paid and to an accounting from the trustee in bankruptcy for the same to the extent of the assets in his hands.

Defendant has moved to dissolve the restraining order and to dismiss the cause on the ground that the complaint fails to state any cause of action; that the complaint fails to state any facts showing that plaintiff has not an adequate remedy by filing her claim in the bankrupt's estate; that plaintiff should proceed in the bankruptcy court; that the issues raised by the complaint have been decided by the Circuit Court contrary to the claim of the plaintiff; that that court had jurisdiction of the parties and the subject matter and that its decision is binding upon the plaintiff and constitutes

res adjudicata against the plaintiff herein as to all matters that were decided and all that might properly have been presented to the court. It is, therefore, necessary to determine first the effect of the decree of the state court.

By consent of the parties, I have been supplied with copies of the complaint, the answers thereto and the decree. Ordinarily, in determining a motion to dismiss, the court will consider only the averments of the pleadings, but where the parties by agreement have consented that certain documents shall likewise be submitted, the court may properly consider them.

When the legatees began their suit in the state court, seeking to charge the real estate of the testator with a lien to secure their legacies, and made parties defendant thereto the life tenant and the remaindermen, that court obtained jurisdiction of the subject matter and of the parties with power to adjudicate all issues properly presented to it with respect to the subject matter and the interests of the parties therein. Plaintiff, as a defendant in the suit, filed no counterclaim. It was bound, as was the life tenant, by the decree which found that in the estate of the testator there was no personal property and decreed that the will, properly construed, charged the real estate of the testator with a lien to secure the payment of the legacies. By this judgment all persons claiming any interest in the real estate were foreclosed as against the legatees. Of the propriety of that decree no party thereto may now complain.

Probably plaintiff might have filed a counterclaim in that court setting up the facts now presented and praying for the relief now requested, but having failed to do so, is she estopped to present the controversy to this court? The doctrine of res adjudicata generally extends not only to matters actually determined in a former suit but embraces also all grounds for recovery and defense involved which might have been decided. Lee v. Hansberry, 372 Ill. 369, 24 N.E.2d 37. This rule is followed in the interest of preventing multiplicity of suits. But the effect of the decree is to be determined by the Civil Practice Act of the State of Illinois in force January 1, 1934, Ill.Rev.Stat.1939, c. 110, § 125 et seq. which declares an intent to simplify pleadings and procedure and to promote liberality in the trial of

causes, to avoid technicalities and to promote the joining in one cause of all issues between all parties thereto. Section 38 provides that any demand by any plaintiff, defendant, codefendant against any other party either in tort or contract for liquidated or unliquidated damages or for other relief may be pleaded as a cross demand in any action and when so pleaded shall be called a counterclaim. The language of this section differs from that of Rule 13 of the Code of Civil Procedure for the District Courts promulgated by the Supreme Court of the United States, 28 U.S.C.A. following section 723c. By the latter, apparently, the Supreme Court intended that filing of any proper cross claim should be compulsory and that if an action should proceed to judgment without intervention of counterclaim, the latter shall be thereafter barred. Such was the previous ruling in American Mills Co. v. American Surety Co., 260 U.S. 360, 43 S.Ct. 149, 67 L. Ed. 306. See also Marconi Wireless Telegraph Co. v. National Electric Signaling Co., D.C., 206 F. 295. But the Illinois Code does not make the filing of the counterclaim obligatory. It is obvious that the purpose of that code in permitting a wide scope of cross demands was to encourage reduction of litigation, but it is equally obvious that it was not thought wise to invoke the doctrine of res adjudicata against defendants who prefer not to bring in counterclaims which might incumber the suit to an unreasonable extent. Apparently it was the legislative policy that where the reasons for and against the filing of the counterclaim somewhat balance each other, parties should be given an option and that the public interest in reduction of litigation should not be deemed so strong in such cases as to override what they consider to be to their best interests. McCaskill in Illinois Civil Practice, p. 84, and cases there cited. It would seem, therefore, that while plaintiff might, as defendant in the state court, have interposed a counterclaim, under the plain intent of Section 38, Ill.Rev.Stat.1939, c. 110, § 162, she was not bound so to do but had the option either of filing a counterclaim in that suit or of not doing so.

Furthermore, it is the ordinary rule that a plaintiff having a right to sue in the United States Court on the ground of diversity of citizenship should not be deprived of that Federal right except where the clearest of causes therefor exist. I conclude, therefore, that the decree con-

stitutes no adjudication of the issues involved in this controversy and that the retention of jurisdiction by the state court does not abate this action.

Plaintiff alleges that it was the bankrupt's duty to carry out his respective obligations as executor, as life tenant and as trustee; that he has failed and neglected to do so; that in consequence, the loss of two farms has accrued to the remaindermen; that plaintiff is subrogated to the rights of the legatees who have received property of the remaindermen which they would not have obtained except for the default of the trustee and that the income from the land now in the hands of the trustee or his trustee in bankruptcy is, therefore, subject to a trust in favor of the remaindermen. Defendants urge that the decree of the state court effected an adjudication of these contentions against plaintiff.

That court found that the bankrupt had never filed any accounting as executor; that he had not closed the estate of the deceased; that he had mingled funds belonging to him as executor with his own funds; that he had taken no steps to segregate enough of the real estate to protect the legacies and that he had not segregated and set apart the trust fund created by the will. The court made no adjudication that his acts constituted a breach of trust. However, it did decree that it should execute full and complete jurisdiction of the estate of the deceased and of the trusts created therein; that it should close the estate of Abraham Cassell, deceased, and provide for the payment of the legacies. Consequently it removed the executor and ordered sold enough of the property to satisfy the legacies and took proper steps to close the executorship.

The acts which the court found the bankrupt guilty of it did not stamp with an adjudication expressly disapproving them as a breach of trust but the facts found are such as are quite generally recognized as a violation of the trustee's duties.

Among the obligations of any trustee, including a testamentary trustee and an executor, are those to use care and diligence in the discharge of his functions. For the failure to do so, he is liable even when no wrongful intent appears. He may be liable for neglect because answerable for property actually lost through want of care and prudence and for moneys which he might have received if he had exercised due care, prudence, and judgment in his dealings with the trust estate. He is bound to protect the trust property in every reasonable manner during the continuation of the trust. He must with due diligence obtain possession thereof and retain it securely under his control and is liable for losses resulting from his neglect or unreasonable delay in this respect. Pomeroy's Equity Jurisprudence, Section 1066. In some instances a trustee is bound to exercise such care and prudence as men of common prudence ordinarily exercise in their affairs and in still others, when no express directions are given as to his obligation in making investment, the rules are somewhat arbitrary but based upon the clearest principles of justice and expediency. In the latter instances he is not given the same freedom of choice that may be exercised by prudent business men in their own affairs but is held to a higher standard of duty. Pomeroy's Equity Jurisprudence, Section 1074. He is forbidden to deal with trust property for his own advantage. He may not make incidental profits for himself in its management or acquire any pecuniary gain from his fiduciary position. Nor is he permitted to mingle trust funds with his own, even though he acts in good faith. If the mingling results in loss, accidental or otherwise, he must make it good. If trust funds have been mingled with his own, the burden of proof rests upon him to show conclusively what portion is his and, if he cannot identify his own, even though it be the whole mass, the mixed fund will be awarded to protect the beneficiary. Pomeroy's Equity Jurisprudence, Section 1076. He is forbidden to do any act inconsistent with the interests of the beneficiaries, irrespective of his good faith or bad faith, for a breach of trust has a broader meaning than willful and fraudulent acts. Every violation by a trustee of a duty which equity lays upon him, whether willful or fraudulent or done through neglect or arising through oversight or forgetfulness, is a breach of trust. The beneficiary may always claim and reach the trust property through all its changes of form while in the hands of the trustee and follow it into the possession and ownership of third persons until it has been transferred to a bona fide purchaser for valuable consideration and without notice, and a court of equity will furnish him with all incidental remedies necessary to enforce his claim and render it effective. Pomeroy's Equity Jurisprudence, Section

1080; Perry on Trusts, 7th Ed., 1441; 1 Bogert on Trusts and Trustees, 536, § 192; 2 Scott on Trusts, 1455, and Vol. 3, p. 2324.

These general principles I advert to because of their bearing upon the sufficiency of plaintiff's complaint. It has been found that the trustee has been derelict in his duty. It has not been adjudicated that he is liable to plaintiff or that any of his funds mingled, as the court found, with the estate funds, belong in equity to the legatees or to the remaindermen. It is the affirmative of this latter proposition that plaintiff seeks to establish here. Whether the trustee as executor or testamentary trustee should have, substantially contemporaneously with his qualification, set off the trust fund necessary to secure the legacies, whether his failure so to do was such neglect and lack of diligence as would create a trust liability against him or a resulting trust or a constructive trust in the funds accumulated from the property, cannot be determined in the absence of proof of facts and circumstances sufficient to characterize the facts as plaintiff claims they should be adjudicated. Plaintiff alleges a breach of trust resulting necessarily in a conversion and loss of the remaindermen's property and asserts that the funds in the hands of the trustee in bankruptcy of the trustee are impressed with a trust relationship. She is entitled to make proof of her averments.

It is said by defendant that if there is a liability it is one in simple contract and not one in rem impressing the funds in the hands of the trustee in bankruptcy with any trust character. But I am unable to say, in the absence of proof, that such is the character of the alleged liability. Again the character of the liability must be determined from the evidence. On the face of the bill, the averments are sufficient to constitute a liability of the funds in rem, at least in part.

Nor am I impressed with the contention that plaintiff has no such interest as will permit her maintenance of the suit. A remainderman, whether vested or contingent, may protect his interests by relief by injunction. 2 Thompson on Real Property, 1939 Ed., 542, 543; Palmer v. Young, 108 Ill.App. 252; 21 C.J. 1012, pp. 171 and 172½; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108; 3 Simes on Future Interests, § 625.

It is said that plaintiff contended in the Circuit Court of Iroquois County that the real estate should not have been sold in 1916. The trustee in bankruptcy likewise there so contended. The court apparently found against both. The essentials of an estoppel do not grow out of such a situation, for there can be no estoppel unless there is injury to one party or advantage to the other, resulting from the acts or declarations said to create the estoppel; one is not estopped by admissions as to the law. 21 C.J. 1135, 1139, 1148; Ward v. Ward, CC., 131 F. 946; 2 Cir., 145 F. 1023.

Nor can I see from the face of the bill that the remaindermen have been guilty of laches. Ordinarily they are not guilty of laches in failing to assert their claim before their right to possession accrues. 21 C.J. par. 174; Turner v. Hause, 199 Ill. 464, 65 N.E. 445; Pugh v. Frierson, 6 Cir., 221 F. 513. There is no showing that plaintiff knew that the legacies had not been discharged. There is nothing in the pleading to show knowledge by plaintiff of any negligence or breach of trust by trustee. So far as the pleadings disclose it was not until the state court entered its adjudication requiring property in which the remaindermen were interested to be sold to satisfy the legacies, which over a period of twenty-three years had not been settled and which were to be paid to the legatees when thirty-five, that plaintiff knew that she had been injured. Consequently she cannot be charged with laches.

It is said that the trustee in bankruptcy stands in the position of a judgment creditor and that, therefore, his title to the fund, on the face of the pleading, is superior to that of plaintiff. But a judgment creditor, in whose shoes a trustee in bankruptcy stands, is not a bona fide purchaser for value. Nobody may assert title to trust funds as against a beneficiary except such a purchaser without notice. Lewin on Trusts, 13th Ed., p. 477, and cases there cited.

The motions to dissolve the restraining order and to dismiss are denied. A temporary injunction as prayed shall issue.

The bankrupt estate is in process of administration before the referee. The present suit is against the trustee in bankruptcy alone. It seeks an adjudication with respect to funds now held by the trustee in bankruptcy. It is similar in this respect to a petition for reclamation. Consequently, in order that the administration

may be entirely before one official, this cause should be consolidated with the bankruptcy cause and the issues herein determined by the referee, subject to the right of review in this court.

Accordingly it is ordered that the defendant answer the bill within fifteen days of this date; that thereupon this cause be consolidated with the bankruptcy cause, wherein Charles Cassell is the bankrupt, being No. 2138–D, and that the original bill herein and the answer thereto be referred to the referee with full power to act thereon.