## GRODSKY et al. v. SIPE.

### Civil No. 85–D.

District Court, E. D. Illinois.

Jan. 9, 1941.

Acton, Acton & Baldwin, of Danville, Ill., and J. L. London, of St. Louis, Mo., for plaintiff.

Bookwalter, Carter & Gunn, of Danville, Ill., and Roscoe South, of Watseka, Ill., for defendant.

LINDLEY, District Judge.

In view of the statement of facts contained in my prior decision, Grodsky et al. v. Sipe, Trustee, D.C., 30 F.Supp. 656, and in the referee's decision after trial, I shall discuss in a supplementary manner only such features of this cause as seem to me material to a demonstration of the propriety of my conclusions.

It is a fact adjudicated by the Circuit Court of Iroquois County that, under the will of the testator, the two legacies of $12,500 each should have been delivered by the executor to himself as trustee to hold for the legatees until they had become thirty-five years of age. It is adjudicated by the same decree that, by virtue of the terms of the will, the legacies were a lien upon the real estate which Charles Cassell took as executor and in which he held the life estate (in the same of which he was seized and possessed the remainder being contingent in plaintiffs and, in case of their prior decease, in other parties. It is adjudicated also that the legacies bore interest at the rate of 2½ per cent per annum. Consequently the situation, upon the death of the testator, was that Cassell, the bankrupt, held a life estate and plaintiffs the contingent remainder in lands incumbered by the amount of the legacies plus interest.

The first question confronting us then is whether there was a breach upon the part of the bankrupt as trustee, arising from the fact that he took no steps to convert the lien securing the legacies into cash or other securities. If he owed to the legatees the duty immediately to convert the form of the legacies from that of a first lien upon real estate into something else and the legatees were thereby injured, they might well complain. But as I look at the facts, the trustee, when he received the lien against the real estate under the will, as security for the legacies which he held for the benefit of the two legatees, was charged only with the duty to see that the legatees, his cestui trusts, were well protected and the interest due them duly accounted for. Though the legacies were immediately vested in him as trustee, it was his duty to hold them and protect them until the legatees' rights should ripen into maturity when they reached the age of thirty-five years. The land was worth some nine times the amount of the legacies. It was unencumbered productive farm land. Human experience affords few investments deserving of higher rating as security than such farm land, when the amount of the lien is one-ninth of the value of the security. If the trustee had sold the land in 1915, when he was first charged with the legacies and vested with the title thereto, and realized cash sufficient to pay them, it would have been his duty to invest the proceeds properly to protect the two legatees until they should become thirty-five years of age. He might, as other investors do, have taken first mortgages upon land of a value two or three times as great as the amount of the mortgage. Undoubtedly a court of equity would have protected him in such action. Yet

the security that he would thus have obtained would not have been as adequate as that which he already had, namely, a lien upon 1,400 acres of land worth $225,000. Consequently there was no breach of his duty as trustee so far as the legatees were concerned. They were adequately protected and had no right, prior to the time when they should become entitled to receive the principal of the legacies, to insist that the trustee obtain any other or better security.

But we must go a step further. Plaintiffs insist that had the trustee, who was also the life tenant, within a reasonable time after the death of the testator, sold enough of the land securing the legacies to satisfy them in full, he would have, because of the higher prices then prevailing for farm lands, have found it unnecessary to sell so much as it was essential to dispose of in 1939, when the legatees had become thirty-five years of age, to satisfy the legacies. They insist that the sale of one farm would have been sufficient at that time to satisfy the legacies, whereas, in 1939, it was necessary to sell two farms. Thereby, they say, they as remaindermen have been injured to the extent of the value of the additional land necessary to be sold in 1939 to discharge the legacies.

■ Considering all of the evidence, I doubt the soundness of the premise that it was a breach of duty upon the part of the life tenant, who was also trustee, to the remaindermen to fail to sell any land prior to the time the legatees became thirty-five years of age. Obviously, looking backward, we know that farm lands have depreciated from twenty-five to fifty per cent between 1918 or 1919 and 1939. But the life tenant, the trustee, cannot be charged with failure to appreciate what would happen in the future. Were it otherwise, many men who are today poor, might have retained their wealth of 1920. Few men were wise enough to foresee that good farm land in Illinois might have been sold in 1919 and 1920 at prices which would purchase twice as much equally good land in 1939. The life tenant knew these farms. He managed them. He collected the income from them. He had lived all of his life in an agricultural district in Illinois. He knew that from the farms of the middle west come staple and necessary food products, largely for the entire nation. The World War was at an end. We were enjoying a peace which proved to be temporary but which then we thought might well be permanent. To charge the trustee with wisdom sufficient to anticipate what has happened is more than a court of equity will do.

Accordingly, I approve the referee's finding that there was no breach of the trustee's duty to the remaindermen in failing to sell the land to satisfy the legacies before they ripened into enjoyment in the legatees.

■ When in 1933 the life tenant became bankrupt and the trustee in bankruptcy was appointed, the latter became vested with all of the rights of the life tenant, subject to all existing valid liens. The will was of record and the trustee was charged with notice of any liens against the land created by it. The only lien thus created was that securing the legacies and interest. Both the life estate and the remainder were subject to this lien. But it was the duty of the bankrupt, as life tenant and as trustee, to protect the estate of remainder by application of the income from the farm to the payment of the interest upon the secured lien of the legacies. He owed the duty to the remaindermen to divert so much of the income as was necessary to pay the interest. In 1939 when the legacies were discharged by a sale of certain of the premises, the bankrupt had not paid all of the interest. The adjudicated deficiency upon one of the legacies was $1,815.69 and on the other, $830.91, a total of $2,646.60; and these deficiencies were included in the amount which the Circuit Court directed should be satisfied by a sale of land. Had the trustee performed his duty in this respect, had he paid the interest to the legatees, it would have been unnecessary to sell any part of the real estate to discharge the deficiencies. To the extent, therefore, that it was necessary to sell the land in which plaintiffs have a remainder to pay the interest charges due the legatees, the remaindermen have been injured and the trustee in bankruptcy, succeeding to the title held by the trustee, so far as his life tenancy was concerned, and collecting the income, was bound equally to the remaindermen to divert so much of the income as would discharge the interest due the legatees. To this extent the remaindermen have been injured. To this extent the income in the hands of the trustee in bankruptcy belongs to the remaindermen. Simes, Future Interests, secs. 629 and 634 and cases there cited. The trustee in bankruptcy must account as trustee to the re-

maindermen for the deficiencies in interest, $2,646.60.

However, the remainder is contingent; it cannot vest until the death of the bankrupt. The court cannot direct the trustee in bankruptcy to pay this money to plaintiffs, but it is its duty as a court of equity to protect the trust fund and it will not permit equity to fail for failure of a proper party to receive the fund. Accordingly I shall appoint and designate a trustee to receive, hold and protect said trust fund, upon his giving a bond in the sum of $5,000 to be approved by this court.

I have considered all of the objections of plaintiffs to the referee's report. They are without merit except as hereinbefore indicated. Accordingly all findings and conclusions of the referee and his order will be affirmed and approved except as herein indicated. I adopt as my findings and conclusions those of the referee, except as modified by what I have heretofore said, and in addition to his findings and conclusions as so modified, I adopt the findings and conclusions herein contained. The defendant will pay the costs.

The interested parties will prepare an order in accord with this memorandum including the appointment, qualifications and terms of tenure of the trustee.