**ESQUIRE, Inc. v. VARGA ENTERPRISES, Inc. et al. (two cases).**

**Nos. 10216, 10217.**

United States Court of Appeals Seventh Circuit.

Nov. 9, 1950.

Rehearing Denied Dec. 12, 1950.

Charles J. Merriam, Ernest A. Wegner, Chicago, Ill., for Esquire, Inc.

Earle E. Ewins, Edward S. Price, Chicago, Ill. (Musgrave, Ewins, Price & Notz, Chicago, Ill. of counsel), for Varga Enterprises.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The suit of plaintiff, Esquire, Inc., having resulted in a judgment that defendants Vargas and Varga Enterprises, Inc., have

infringed its trade-mark rights and unfairly competed with it and that Vargas be restrained from working for other persons, defendants prosecute this appeal, contending that, (1), plaintiff is barred from all or at least part of the relief obtained by reason of what happened in a previous trial; (2), if it is not so bound, the injunction against Vargas from working for others is so unconscionable as not to be equitable; (3), the evidence does not sustain the findings that defendants have infringed plaintiff's trade-marks and have been guilty of unfair competition. Plaintiff has filed a cross-appeal from the part of the judgment dismissing its claim for infringement of copyrights.

In Vargas v. Esquire, Inc., 7 Cir., 164 F. 2d 522, Vargas had sued to enjoin the reproduction of certain pictures made and delivered by him to and used by Esquire, without appending his signature and without accrediting him as the artist. This court determined that Vargas had contracted to supply Esquire some twenty-six drawings for each six-months period beginning March 1, 1944, until the termination of the contract; that the parties had agreed that the drawings furnished and the names "Varga," "Varga Girl," and "Varga Esq.," should forever belong exclusively to Esquire and that the latter should thereafter have all rights with respect thereto, including the right to use, lease, sell or otherwise dispose of the same as it should see fit and to copyright any of the drawings, names, designs or material specified and that no rights in the drawings or the specific names remained within the control of or under ownership of Vargas.

In Vargas v. Esquire, 7 Cir., 166 F.2d 651, Vargas had brought suit to cancel and set aside the contract mentioned in the earlier decision on the ground that at the time of its execution, a relationship of special trust and confidence existed between Vargas and Smart, Esquire's executive officer and agent, resulting in the overreaching of Vargas by Smart. The trial court had granted the relief prayed and defendant had appealed. Upon examination of the record, we found that the evidence did not support a finding of a fiduciary relationship between Vargas and Smart and that the proof fell far short of proving bad faith or fraud on the part of Smart, or that Vargas had reposed confidence in Smart or that the latter had dominated or influenced Vargas but led inescapably to the conclusion that Vargas had made an independent examination of the terms and conditions of the contract, had placed no reliance on what Smart had said or might have said and had knowingly and voluntarily executed the agreement. Accordingly we reversed the judgment.

Thus it is established by prior decisions that the contract is valid and that, under it, the drawings made and delivered by Vargas and the names "Varga," "Varga Girl," and "Varga Esq.," are owned by Esquire and that Vargas may not enjoin the use of his drawings by plaintiff without attaching thereto either of the terms mentioned to indicate him to be the artist.

At the time of the remand of the last mentioned cause, there was remaining in the trial court, undisposed of and unaffected by the decision of this court, a counterclaim which Esquire had filed in response to Vargas' complaint, in which Esquire insisted that the agreement should not be cancelled and averred that, inasmuch as it contained a covenant on the part of Vargas not to work for others and, as Vargas had said in his own complaint and in public announcements made by him and his counsel, he was threatening to and intended to furnish drawings to others than Esquire, unless enjoined from violating this covenant and from furnishing drawings to others than Esquire, the latter would be irreparably injured, being without adequate remedy otherwise to redress the injury and damage which it would incur by reason of plaintiff's breach of the covenant. It prayed that Vargas be enjoined from furnishing to anyone other than defendant any drawings of any kind. This counterclaim was evidently based upon Vargas' averment in his original complaint that he intended to make drawings for others and to supply others with such drawings. When the remanding order came down from this court Vargas asked leave to file an answer to the counterclaim and his own counter-

claim against Esquire wherein he prayed that the court hear and determine the question as to whether he could or should be enjoined from working for others and as to whether Esquire should be enjoined from interfering with such work. Thereupon Esquire moved to dismiss its counterclaim without prejudice. After extended colloquy, the court directed that Esquire's claim be dismissed with prejudice. Thereupon an order was entered dismissing it with prejudice, identical in form with the order prepared by Esquire except that the words "without prejudice" were altered to the words "with prejudice." It is Vargas' contention now that this dismissal with prejudice worked an adjudication not only as to everything Esquire had claimed in its counterclaim but as to everything that it might have asserted in support of the relief prayed.

A dismissal with prejudice is "as conclusive of the rights of the parties as an adverse judgment after trial, being res judicata of all questions which might have been litigated in the suit," 50 C.J.S., Judgments, § 633, p. 62, and cases cited. So it was announced in Cleveland v. Higgins, 2 Cir., 148 F.2d 722, 724, in these words: "a dismissal with prejudice is a final judgment on the merits which will bar a second suit between the same parties for the same cause of action. United States v. Parker, 120 U.S. 89, 7 S.Ct. 454, 30 L.Ed. 601; Baker v. Cummings, 181 U.S. 117, 21 S.Ct. 578, 45 L.Ed. 776. The cause of action which thus becomes res judicata comprehends not only what was actually decided but all matters which might have been decided. Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405." Applying this rule to the instant case, it would seem clear that the dismissal with prejudice of the counterclaim which Esquire had filed, as it was compelled to do by the provisions of Rule 13(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in response to Vargas' complaint seeking to set aside the contract between the parties and averring his intention to work for

others, in which counterclaim Esquire sought enforcement of the same contract by an injunction restraining Vargas from furnishing drawings to anyone other than Esquire as he had averred he intended to do, constituted a final adjudication that Esquire was not then entitled to such an injunction on the basis of anything that Vargas had done or threatened to do prior to that date. Consequently, it seems clear that the District Court erred in including in its judgment order that provision which enjoins Vargas "from creating for or furnishing to any one other than Esquire any drawings of any kind or character," for that is precisely the relief Esquire sought in its counterclaim filed in the prior suit, and while it is true that Esquire's right to such relief was never actually litigated, it is clear that it might have been litigated and, in fact, would have been but for Esquire's motion that it be dismissed. It is equally clear that Esquire was, at the time of the entry of the dismissal, fully cognizant of those acts of Vargas, i. e., the furnishing of drawings to others than Esquire, on which the instant suit is predicated,[1] and that those acts fell within the scope of the pleadings which had been filed in that action. Under these circumstances, the dismissal with prejudice of Esquire's counterclaim was as conclusive of its right to the injunction prayed for therein as if the question had actually been litigated, and the doctrine of res judicata bars Esquire from procuring in the instant case the very injunction it sought and was denied in the prior suit. 50 C.J.S., Judgments, § 633, p. 62; Cleveland v. Higgins, 2 Cir., 148 F.2d 722, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428; Lake v. Wilson, 183 Ark. 180, 35 S.W.2d 597, 38 S.W.2d 25; Bank of America v. Jorjorian, 303 Ill.App. 184, 24 N.E.2d 896. It follows that paragraph 8 of the judgment order entered by the court below was erroneous.

What has been said with respect to the invalidity of the prohibition against Vargas' furnishing drawings to anyone other than Esquire does not, however, ap-

---

1. This suit had been filed by Esquire on August 12, 1947, well over a year before the dismissal of Esquire's counterclaim in the prior suit.

ply to the restraint embodied in paragraph 7 of the District Court's judgment order, which provides, among other things, that Vargas and the other party defendants shall be enjoined from "competing unfairly with plaintiff by the use of the trade marks 'The Varga Girl,' 'Varga Girl,' 'Varga,' 'Varga Esq.'" It is, of course, elementary that the dismissal of the counterclaim filed by Esquire in the prior suit could not have had the effect of prejudicing any right of action Esquire might have had against persons who were not parties to that action; res judicata is operative only against the parties to the action in which the judgment relied upon was rendered. 50 C.J.S., Judgments, § 601, p. 25; Sasser v. First Joint Stock Land Bank, 5 Cir., 99 F.2d 744. And even in the case of Vargas, the judgment in the former action, and the dismissal with prejudice of Esquire's counterclaim filed therein, became res judicata only as to the rights there in issue, as well as any other rights so closely related to the cause of action asserted therein as to fall within the scope of the compulsory counterclaim provisions of Rule 13(a) of the Federal Rules of Civil Procedure.[2] Audi Vision, Inc. v. R.C.A. Mfg. Co., 2 Cir., 136 F.2d 621, 624; Grodsky v. Sipe, D.C.Ill., 30 F. Supp. 656; Pennsylvania R. Co. v. Musante-Phillips, Inc., D.C.Cal., 42 F.Supp. 340.

■ Here, it appears that Esquire's right of action for unfair competition and trade-mark infringement was not in being at the time of the service of its counterclaim in the prior suit on April 2, 1946, and that it was not, therefore, a compulsory counterclaim required to be filed in that suit. Furthermore, at the time of the dismissal of the counterclaim, Esquire's claim for unfair competition and trade-mark infringement had become "the subject of another pending action," within the exception of Rule 13(a) of the Federal Rules

of Civil Procedure. Consequently, Esquire was not compelled under Rule 13(a) to assert it in the counterclaim. That cause of action was at most a claim which, with the permission of the court, might have been filed in a supplemental pleading, Rule 13 (e), Federal Rules of Civil Procedure, with respect to which a judgment in a prior suit is not res judicata. It follows that the injunctive provisions of paragraph 7 of the District Court's judgment order are not barred, either as to the defendant Vargas or the defendant Varga Enterprises, Inc., by the dismissal with prejudice of Esquire's counterclaim filed in the action brought against Esquire by Vargas.

■ We have seen that, under the prior adjudications between these parties, the trade names of "The Varga Girl," "Varga" and "Varga Esq.," and all drawings delivered by Vargas to Esquire are the property of Esquire by virtue of a valid contract between the parties. In its judgment the District Court included a finding that defendants had "unfairly competed with plaintiff by using" the trade-marks and had "infringed" them. The evidence amply supports the findings; indeed, so we understand, defendants do not controvert the unlawful use of the trade names. The words were admittedly used on products competing with those of plaintiff. Vargas himself testified that it was his idea to call defendants' calendars "Varga Girl Calendars," that the "main thing" was "Varga Girl." Defendants' advertising posters contained the words "Famous Varga Girl Calendar." Upon this and other evidence we think the District Court could not properly have failed to find infringement and unfair competition. Consequently the judgment of unfair competition and infringement of trade names, the injunction against continuation of such acts and the accounting for damages accruing to plaintiff on account thereof were entirely proper.

2. "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its ad-

judication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

Defendants insist that all matters heretofore litigated between the parties were laid open in the trial below and that, as it claims, inasmuch as the evidence surrounding the execution of the contract is different from that before us when we held the contract valid we should review our former holding of validity of the contract and on such review set it aside. We do not believe that the pleadings are such as to warrant any such procedure or hearing. The complaint charged unfair competition, infringement of trade-mark and copyright and prayed an accounting. The counter-claim of Vargas prayed that the covenant on his part not to furnish drawings to anybody else, be held unenforceable, first, because of its nature and, second, because of the estoppel hereinbefore discussed; that the pictures made by defendants subsequent to January 10, 1946, and not furnished to Esquire be adjudged the property of Vargas and that the court restrain Esquire from interfering with Vargas' right to render service to other persons. Thus the issues were clearly drawn. Vargas filed no pleading seeking readjudication of the validity of the contract because of newly discovered evidence either before the trial or during its progress after the alleged discrepancies in the testimony of Smart came to light. There is no issue drawn between the parties before us under which we would have the right to review the former adjudication in that respect. Although unnecessary, we might add that an examination of the evidence discloses that even were the issue before us, the difference in evidence is not such as would justify us in disturbing the former adjudication. Furthermore, it should be observed that any unfair conduct upon the part of Smart, in order to justify an invalidation of the contract, must have occurred in 1944 when the contract was executed. However, the evidence is undisputed that Vargas continued to work in accord with the contract after it was executed and thereby by his conduct assented to an agreement which later he claimed to have been void from the start. Such conduct does not appeal strongly to the conscience of a chancellor. At any rate we think the court below was not at liberty, under the issues raised by the pleadings, and that we, consequently, are not at liberty to disturb the prior adjudication of validity of the contract.

Esquire urges that the District Court erred in dismissing that portion of its complaint which charges that defendants have been guilty of copyright infringement in copying, reproducing and publishing certain works of art appearing in their calendar for the year 1948. It is Esquire's contention that the evidence conclusively shows that the accused works of art were copied from certain drawings which had previously appeared in various issues of Esquire during the period from 1943 to 1946 and which had been copyrighted by Esquire, but that, irrespective of the resolution of this question of fact, the fact that Esquire is by contract the owner of all the drawings made by Vargas impels the conclusion that the reproduction without its consent of any drawing made by him constitutes copyright infringement. The District Court, however, held that the contract between the parties contained no present grant of title to future drawings of Vargas and that, consequently, Esquire had no such title; it found further that there were, as between the accused drawings and those copyrighted by Esquire, distinctions sufficient to remove the former from the category of copied works.

The contract entered into between Vargas and Esquire on January 1, 1944, after providing that "Vargas agrees * * * as an independent contractor, to supply Esquire with not less than twenty-six (26) drawings during each six-months' period," continues: "The drawings so furnished * * * shall forever belong exclusively to Esquire, and Esquire shall have all rights with respect thereto * * *." In the light of these clear and unambiguous provisions, we think that the District Court was bound to conclude, as it did, that the contract "made no present grant of title to future drawings" but rather contemplated that Esquire's title should not attach until

such time as the drawings were "supplied" or "furnished" to it, and that, consequently, Esquire has no title to drawings made by Vargas but never submitted or delivered to it, *i. e.,* drawings which have not been "supplied" or "furnished" it within the contemplation of the contract, on which to bottom its action for infringement of its alleged common law copyright to such drawings.

 With respect to the alleged infringement by the defendants of Esquire's statutory copyrights to certain drawings which had been delivered to it by Vargas and actually published by it, it is contended that the trial court completely ignored the question of copying and erroneously held that, because there existed discernible differences between the accused drawings and those copyrighted by Esquire, the accused drawings did not infringe. This contention is difficult to reconcile with the District Court's detailed enumeration of the several distinctions to be found, in each case, between the copyrighted drawings and the allegedly infringing drawings and its conclusion that there were "a sufficient number of elements of distinction between the original and the accused drawings to remove the latter from the category of copied work" and to constitute each of them a "new creative work of art." Such statements are not susceptible of the interpretation contended for by plaintiff, *i. e.,* that the lower court held that the fact that there were differences between the accused drawings and Esquire's copyrighted drawings meant there was no infringement, irrespective of whether the former were or were not copied, but impliedly, if not expressly, constitute a finding that the accused drawings were not copies, a finding which has ample evidentiary support and which is binding on this court by virtue of the provisions of Rule 52 of the Rules of Civil Procedure. Consequently, Esquire's argument must be rejected and the District Court's dismissal of the complaint with respect to the issues of copyright infringement affirmed.

We think it unnecessary to consider further contentions. The judgment will be re-versed as to the injunction restraining Vargas from supplying drawings and pictures to other parties. In all other respects it will be affirmed. Costs arising in this case shall be taxed one-half against each party.