John PREZIOSO, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 19012.

United States District Court
E. D. New York.

Feb. 5, 1960.

Vincènt J. Meccio, New York City, for plaintiff.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. New York, Brooklyn, N. Y., for defendant.

Ann B. Miele, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

BARTELS, District Judge.

Cross motions for summary judgment. This action was commenced pursuant to Section 205(g) of the Social Security Act (42 U.S.C.A. § 405(g) ), seeking a review of a final decision of the Secretary of Health, Education and Welfare requiring the plaintiff to make restitution to the United States in the amount of $1,514.24, which amount was erroneously paid by the Bureau of Old Age and Survivor's Insurance (hereinafter referred to as the "Bureau") to plaintiff's father on plaintiff's behalf.

Plaintiff was born in June of 1934. In January 1941, plaintiff's father, Andrew (hereinafter called "Andrew") applied for and received old age benefits in the amount of $33.27 per month. In the following month Andrew, as plaintiff's guardian, made application for and received on plaintiff's behalf child's benefits in the amount of $16.54 per month. Andrew died in November of 1952. Thereafter it was discovered that Andrew had not retired in 1941 but had continued to be employed under a new Social Security number, earning wages in excess of the statutory limit of $14.99 per month.

After investigation, the Bureau notified plaintiff on October 25, 1956, that he had received incorrect payments made to his father on his behalf in the sum of $1,514.24, stating that he was required to make a refund of this sum to the Bureau. The basis for the demand was that Andrew had not retired and was not entitled to any old age or child's benefits. Upon plaintiff's request on September 25, 1957, a hearing was subsequently held before a referee who determined on March 14, 1958, that plaintiff was required to refund the sum of $1,514.24. On July 24, 1958 plaintiff's request for review was denied, making the finding of

the referee conclusive, which finding became the decision of the Secretary.

From the record it appears that Andrew made contributions to plaintiff's support during the period from 1942 to 1947, inclusive. The amount of the contributions is not disclosed because Andrew lived with his family during that period. However, from 1947 to 1950, when Andrew lived apart from his family, the contributions aggregated $100 per month for both the plaintiff and his sister Rose. During the period from 1942 to 1950, inclusive, Andrew's earnings as reported to the Bureau were as follows:

| 1942 | $ 880 (approximately) |
|------|------|
| 1943 | 950 |
| 1944 | 1,447 |
| 1945 | 1,315 |
| 1946 | 1,556 |
| 1947 | 1,576 |
| 1948 | 1,554 |
| 1949 | 1,600 |
| 1950 | 1,531 |

To indicate the amount at Andrew's disposal, there should be added to the above sums $400 Social Security benefits which Andrew illegally received on his own behalf. In addition, Andrew, while separated from his family during the period from 1947 to 1950, received free lodging. Before receiving child's benefits aggregating $400 annually for his two children, Andrew's average income for the period from 1942 to 1950 was approximately $1,700 annually and for the period from 1944 to 1950 it was approximately $1,900 annually. If there is added to these sums the $400 illegally received by Andrew annually as child's benefits for his two children, Andrew's income for the above periods was $2,100 and $2,300, respectively. The referee found that included in the support furnished plaintiff by Andrew from 1942 to 1947 and in the $1,200 paid out annually thereafter by Andrew for the support of plaintiff and his sister, was the $200 Andrew received annually from the Bureau on behalf of plaintiff.

Before reviewing the decision of the Secretary, it is necessary to determine if that officer had jurisdiction over this case under the Act. As remarked in Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, at page 473, 67 S.Ct. 801, at page 804, 91 L.Ed. 1028, "in reviewing an administrative order, it is ordinarily preferable, where the issue is raised and where the record permits an adjudication, for a federal court first to satisfy itself that the administrative agency or officer had jurisdiction over the matter in dispute." Further, the power of this Court to make such a determination is specifically set forth in 5 U.S.C.A. § 1009(e).

The referee based his decision on Sections 203 and 204 of the Act and upon general principles of common law. He relied upon Section 203(c), which provides for deductions from dependents' benefits because of work by old-age insurance beneficiaries, upon Section 204 (a) which provides for adjustment in case of erroneous overpayments or underpayments by means of increasing or decreasing subsequent payments, and upon Section 204(b) which provides that "no adjustment or *recovery* by the United States in any case where incorrect payment has been made to an individual who is without fault" shall be made (emphasis added). The referee concluded from these Sections that there was no reasonable basis to infer from a construction of the Act that the provisions of Section 204(a) were not applicable to a child. He then buttressed this finding with the general principle of common law that "the Government has a right to recover money paid by mistake, whether of fact or law. United States v. Bentley [2 Cir.], 107 F.2d 382; United States v. Saunders, [1 Cir.], 79 F. 407; United States v. Kerr [C.C.], 196 F. 503; United States v. Wurts, 303 U.S. 414 [58 S. Ct. 637, 82 L.Ed. 932]". In so doing the referee held that the Government may trace funds without being required to identify specific proceeds of checks and consequently the payments made to Andrew on plaintiff's behalf were in fact

traced to plaintiff and his sister by means of the support rendered to those children by Andrew.

The Court finds nothing in Sections 203 and 204 and, in fact, in no other sections, which justifies a recovery against plaintiff except by way of "decreasing subsequent payments" to which plaintiff may be entitled. Section 204(b) specifically prohibits adjustment or recovery from an individual who is without fault or where "recovery would defeat the purpose of this title or would be against equity or good conscience". The use of the word "recovery" in this subdivision does not in any way increase the power of the Secretary to correct errors of overpayment otherwise than by adjustment, but on the contrary, is merely a bar to adjustments under the Act or recovery outside of the Act where the conditions of that subdivision are satisfied. Section 205(a) of the Act authorizes the Secretary to adopt proper rules and regulations not inconsistent with the Act to provide for the taking of proof and evidence "in order to establish the *right to benefits* hereunder" (emphasis added). Subdivision (g) of said Section provides for the machinery of review after a final decision of the Secretary. The sections of the Regulations adopted by the Secretary under the Act are 404.501 and 404.-502, which simply limit the adjustments with respect to overpayments to adjustments of benefits to be received under the Act. Unless, therefore, plaintiff is entitled to benefits under the Act, it is difficult to comprehend how the Secretary can resort to the machinery provided by the Act in order to obtain a recovery under the Act.

To obviate this difficulty the Secretary, in his correspondence and otherwise, has referred to plaintiff as a "claimant". Actually, plaintiff is not at the present time a "claimant" under the Act and *non constat*, may never be one. Jurisdiction cannot be conferred upon the Secretary under the Act by the technique of semantics. It is true that Andrew filed a claim on plaintiff's behalf but this was an unauthorized claim since Andrew never retired and was not entitled to any benefits for plaintiff. From an examination of the Act and the Regulations issued thereunder the Court must conclude that the Secretary had no jurisdiction to proceed administratively against plaintiff under the Act. His decision, therefore, is void and should be vacated. This conclusion, however, does not mean that the Secretary cannot recover in a proper case, funds erroneously paid by him, outside of the provisions of the Act and pursuant to the general principles of common law. In fact, the Government is frequently in a more advantageous position under such circumstances to effect recovery than an ordinary litigant. See, Grand Trunk Western R. Co. v. United States, 1920, 252 U.S. 112, 40 S.Ct. 309, 64 L.Ed. 484; United States v. Wurts, 1938, 303 U.S. 414, 58 S.Ct. 637, 82 L. Ed. 932; United States v. Bank of Metropolis, 15 Pet. 377, 10 L.Ed. 774; United States v. Dorgan, D.C.Me.1958, 157 F.Supp. 864; cf. United States v. Hart, 3 Cir., 1937, 90 F.2d 987.

■ This Court prefers to rest its decision upon the ground that the Secretary has no jurisdiction in administrative proceedings over cases of this nature. Nevertheless, in order to protect the parties from the necessity of further proceedings in the event it is in error, the Court believes it should review the case on the merits. The Court is mindful of the fact that the administrative order of the Secretary should not be disturbed if supported by "substantial evidence".[1] To determine what is "substantial evidence" presents a difficult task since it is not a standard which affords ground for any certitude. It has been stated that "Evidence is 'substantial' if it is the kind of evidence a reasonable mind might accept as adequate to support a conclusion." [2]

---

1. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456; 5 U.S.C.A. § 1009(d).

2. John W. McGrath Corp. v. Hughes, 2 Cir., 1959, 264 F.2d 314, 316, certiorari denied 360 U.S. 931, 79 S.Ct. 1451, 3 L. Ed.2d 1545.

As an illustration, it has been further held that the administrator "alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court."[3] As stated by Mr. Justice Frankfurter: "Since the precise way in which courts interfere with agency findings cannot be imprisoned within any form of words, new formulas attempting to rephrase the old are not likely to be more helpful than the old. There are no talismanic words that can avoid the process of judgment. The difficulty is that we cannot escape, in relation to this problem, the use of undefined defining terms."[4]

■ Upon canvassing the record as a whole, this Court is of the opinion that the evidence in support of the Secretary's finding is not the kind of evidence which a reasonable mind might accept as adequate. Plaintiff's liability is predicated upon the finding that Andrew paid over to plaintiff the funds received from the Bureau on plaintiff's behalf. This is based solely upon an inference. There is no corroboration of this inference. Considering Andrew's illegal action in applying for benefits and the fact that he received annually a total income of $2,100 to $2,300, of which only $200 was received from the Bureau for plaintiff, it is difficult to accept as an adequate basis for liability in this case the inference that it was the $200 received from the Bureau which Andrew contributed annually to plaintiff's support and not funds received from independent sources or for his own benefit. True, it is an inference that the Secretary may select but standing alone it does not appear sufficient to justify the requirement of substantiality. It seems to this Court to be a pure speculation. This conclusion becomes clearer when it is recalled that plaintiff's mother and sister were working at the same time to earn wages to maintain the household where plaintiff lived with his family.

Aside from the lack of substantial evidence, the decision of the Secretary is inconsistent with the general principles of common law. Assuming the Secretary was correct in tracing to plaintiff the funds received by Andrew for plaintiff's benefit, his theory of recovery from plaintiff is insupportable. There is no question that Andrew had a legally enforceable obligation to support his son.[5] The child's benefits received from the Bureau were, according to the Secretary, employed by Andrew to discharge that obligation. Plaintiff had no notice of the illegal source of the funds and accepted the benefits thereof in good faith. Accordingly, plaintiff was in the position of a bona fide purchaser, for value and without notice, as to these funds. "Not every recipient of a check or other negotiable instrument from a trustee or through a trustee becomes liable for the trustee's conversion. The circumstances under which the trust property is received, the knowledge or notice with which the recipient is charged will determine whether he belongs in the category of an innocent party or in that of persons receiving with guilty knowledge."[6] It could also be added that plaintiff, after receiving the funds for his support, changed his position by relinquishing his claim against Andrew for such support, upon which he cannot now recover from Andrew's estate. No recovery can be had by the Secretary from a transferee of

3. Cardillo v. Liberty Mutual Ins. Co., supra, 330 U.S. at page 478, 67 S.Ct. at page 807, 91 L.Ed. 1028.

4. Universal Camera Corp. v. N.L.R.B., supra, 340 U.S. at page 489, 71 S.Ct. at page 465.

5. De Brauwere v. De Brauwere, 1911, 203 N.Y. 460, 464, 96 N.E. 722, 38 L.R.A., N.S., 508.

6. Sutton v. Eastern Viavi Co., 7 Cir., 1943, 138 F.2d 959, 961; see, also, Brown v. New York Life Ins. Co., 9 Cir., 1945, 152 F.2d 246, 249; United States v. Hart, 3 Cir., 1937, 90 F.2d 987, 988; Grodsky v. Sipe, D.C.Ill.1940, 30 F.Supp. 656, 661.

trust funds without notice who has thus changed his position.[7]

For the reasons above set forth, the order of the Secretary is vacated. Settle order on notice.

7. See, Restatement, Trusts Second, § 292(1) and § 304.